■ BWA CORP., Appellant, v ALLTRANS EXPRESS U.S.A., INC., Respondent, et al., Defendants.—Order, Supreme Court, New York County (Ira Gammerman, J.), entered August 7, 1984, which, *inter alia,* granted defendant-respondent Alltrans Express U.S.A., Inc., summary judgment dismissing the complaint as against it, unanimously modified, on the law, to reverse the grant of summary judgment to Alltrans and reinstate the complaint as against it to the extent it alleges causes of action arising after July 6, 1977, and otherwise affirmed, without costs.

In this action plaintiff landlord seeks to recover sums allegedly due from the defendant lessees as additional rent over an 18-year period by reason of increases in the costs of electricity for which the defendants had covenanted to pay. As there are various issues of fact regarding the obligations of the parties under these covenants, we find that Special Term improperly granted summary judgment dismissing the complaint as to the defendant Alltrans Express U.S.A., Inc.

Plaintiff BWA Corp. (BWA) owns an office building located at 156 William Street. Defendant-respondent Alltrans Express U.S.A., Inc. (Alltrans) occupies several floors of this building in accordance with the following series of transactions: BWA's predecessor-in-interest had entered into a 30-year prime lease for space with Commercial Union Insurance Company of New York's (CU) predecessor-in-interest in 1956. A modification of this lease in 1957 provided for the landlord to supply electricity to the tenant in exchange for an increased rental charge. In 1965, CU sought to sublease the premises to Acme Fast Freight, Inc. (Acme) notwithstanding the provision in the prime lease forbidding subletting without the owner's consent. Accordingly, in consideration for BWA's consent to the proposed sublease, BWA and Acme entered into an agreement providing for the sublessee, Acme, to pay electricity cost increases directly to BWA. This agreement was embodied in a letter dated November 11, 1965, the same date as the sublease between CU and Acme, which was to continue until December 27, 1985. In 1973, Acme was sold to Alltrans Holding Corp., a corporation related to the defendant-respondent Alltrans. In 1976, Alltrans Holding was transferred by stock sale to Alltrans. In June 1978, Acme, having already consummated the sale of its stock to Alltrans, expressly assigned its subleasehold to Alltrans, while remaining obligated to CU and BWA.

The various parties, including the owner BWA, executed a contract in November 1978, whereby in consideration for BWA's consent to the Acme/Alltrans assignment, Alltrans directly covenanted to pay BWA for all "services rendered and material supplied to the sublet space".

Despite these various agreements, including specifically the 1965 Acme letter agreement and the 1978 Alltrans direct covenant, BWA had never sought to collect any electricity costs from CU, Acme or Alltrans at any time, until 1983 when BWA billed each of the parties more than $400,000 for electricity costs for the period 1965-1983. This belated billing was

explained by BWA as being due to the 1965 agreement having been lost in its files and only recently discovered. When the parties refused to pay, BWA instituted this action in 1983, seeking to recover for the electricity increases.

Upon finding that the 1965 agreement was solely between BWA and Acme and did not constitute a modification of the sublease, Special Term held that by reason thereof Alltrans did not assume this obligation when the sublease was assigned to it. We disagree and hold that there are questions of fact precluding such summary disposition.

The letter agreement expressly referred to the sublease and was executed contemporaneously therewith. It also expressly stated that "in order to induce you [BWA] to consent to the making of the above proposed sublease, the undersigned [Acme] agrees [to the schedule of increased electrical charges]".

Where several instruments constitute part of the same transaction, they must be interpreted together. In the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction will be read and interpreted together, it being said that they are, in the eye of the law, one instrument. (*Nau v Vulcan Rail & Constr. Co.,* 286 NY 188.) Accordingly, the sublease and the letter agreement can be read as one instrument and, as such, Alltrans can be found to have assumed this obligation to pay electricity cost increases when it was assigned the Acme sublease.

Furthermore, the assignment was expressly "subject to the provisions of the Major Lease" and Alltrans may be found liable for electricity costs pursuant to its provisions.

Finally, the direct covenant in the 1978 contract required Alltrans to pay charges for services rendered to the subject space, which may include electricity costs.

Issues of fact, vis-à-vis the possible liability of Alltrans to BWA for electricity costs, permeate the various possible interpretations and it was, therefore, error for Special Term to grant summary judgment dismissing the complaint as to Alltrans.

Moreover, Special Term failed to address plaintiff's fifth cause of action which seeks recovery under a theory of quantum meruit. Since plaintiff bore expenses in supplying electricity to Alltrans, a claim is stated and there being issues of

fact as to whether recovery may be had under this theory, this cause of action should not have been dismissed, but should be resolved at trial.

The court below additionally held that BWA should be barred from enforcing the agreements by reason of equitable estoppel. Alltrans moved for summary judgment on this ground as well, claiming that BWA's failure to apprise Alltrans of these charges and assert its rights thereto had induced Alltrans to rely on the rental figures free from electrical charges when it accepted the assignment.

In order for estoppel to exist, three elements are necessary: " '(1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than and inconsistent with, those which the party subsequently seeks to assert; (2) intention, or at least expectation, that such conduct will be acted upon by the other party; (3) and, in some situations, knowledge, actual or constructive, of the real facts.' (21 NY Jur, Estoppel, § 21.)" (*Matter of Carr,* 99 AD2d 390, 394.) The party asserting estoppel must show with respect to himself: "(1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in his position". (*Airco Alloys Div. v Niagara Mohawk Power Corp.,* 76 AD2d 68, 81-82.)

In the instant case, Alltrans' proof on its summary judgment motion failed to demonstrate that all of those elements were present. Critically, the element of "scienter" is lacking, there being no showing, nor even allegation, that BWA had knowledge of the real facts (the 1965 Acme agreement) and, if so, that it knowingly concealed this knowledge from Alltrans. Special Term apparently recognized this this element of scienter was lacking when it dismissed Alltrans' counterclaim for fraud. It was, therefore, inconsistent to uphold the equitable estoppel defense based on the same facts and improper to grant summary judgment on that basis.

Finally, as plaintiff concedes, the six-year contract Statute of Limitations (CPLR 213 [2]) applies and bars its claims for electrical costs prior to July 6, 1977 (six years prior to the commencement of the action) and its action is limited to costs arising after that date. Concur—Sullivan, J. P., Asch, Bloom, Milonas and Ellerin, JJ.