■ FORWARD INDUSTRIES, INC., Respondent, v ROLM OF NEW YORK CORPORATION, Appellant.—In an action, *inter alia,* to recover damages for breach of contract, the defendant appeals from an order of the Supreme Court, Kings County (Aronin, J.), dated September 12, 1985, which denied its motion for summary judgment dismissing the complaint.

Order affirmed, with costs.

The plaintiff, a mail-order company dependent upon telephone service for its sales, entered into an equipment purchase agreement with the defendant, wherein the defendant agreed to deliver and install new telephone equipment on the plaintiff's premises for the total purchase price of $90,038. The contract imposed an affirmative duty upon the defendant to "use *its best efforts* to complete the installation by May 18, 1984, which is the intended Cutover Date" (emphasis supplied). The latter term is defined as "the date on which the customer [the plaintiff] is notified in writing by Rolm that the equipment *is installed* and *is functioning* so as to be substantially providing the basic service for which the equipment is intended" (emphasis supplied). According to the verified complaint, the connection of the new equipment to incoming or tie-in telephone lines was to occur over "the weekend of May 18-20, 1984" in order to minimize the risk of a disruption of telephone service during this aspect of the installation. American Telephone and Telegraph Company and New York Telephone are assertedly responsible for providing service on the incoming telephone lines. The defendant's representative allegedly assured the plaintiff that the new equipment would be operational by Monday morning, May 21, 1984. However, the equipment was not operational on that date and service was not restored until June 25, 1984. Thereafter, the plaintiff commenced this action against the defendant to recover damages due to the deprivation of telephone service under several theories, including breach of contract, negligence, breach of warranty, and fraud.

The defendant alleges that the delay in the cutover (the date the equipment is installed and functioning), which resulted in a disruption of service, was due to circumstances

beyond its control, i.e., the telephone companies' failure to provide operational incoming "WATS" lines. According to the defendant's operational manager, the disruption of service was due to the telephone companies' unorthodox linking of "WATS" and "Centrex" lines so that when New York Telephone disconnected the Centrex lines to allow the defendant to install the new equipment, the WATS lines also went dead. The source of the problem was not discovered until a week later, by an engineer at New York Telephone. The plaintiff alleges that if the defendant had exercised reasonable care in conducting an investigation beforehand, rather than after the fact, it would have discovered the problem and could have coordinated its installation work with the telephone companies' work in changing the existing hookup to accommodate the new equipment. Thus, a question of fact exists as to whether the cause was due to the defendant's negligence or breach of its affirmative duty to use its best efforts to install a functioning system by the intended cutover date or was due to circumstances beyond the defendant's control.

The defendant contends that regardless of the reason for the delay in cutover, it cannot be held liable for damages due to a no-damage-for-delay clause in paragraph 7 of the contract which provides: "It is also understood that all delivery and installation dates, and the intended Cutover Date are approximate, and [the defendant] shall under no circumstances be liable for damages—special, consequential, or otherwise—resulting from delays in delivery, installation or cutover." This no-damage-for-delay provision is printed as the last sentence in a paragraph captioned "Uncontrollable Circumstances". Aside from the last sentence, the paragraph is devoted to addressing matters pertaining to the paragraph heading. It excuses the defendant from performance of any part of the contract to the extent the defendant's performance "is prevented, hindered, delayed, or otherwise made impractical by reason of any flood, riot, strike, explosion, war or other cause beyond the control of [the defendant]". It also contains a provision imposing a duty upon the defendant to notify the plaintiff of any such condition.

Aside from exceptions not applicable herein, exculpatory clauses intended to insulate one of the parties from liability resulting from his own negligence are enforceable, provided the intention of the parties is expressed in clear and unequivocal language (Gross v Sweet, 49 NY2d 102, 107) and the exculpatory clause is not so obscured as to make it probable that it would escape the reader's attention, such as by print-

ing the clause under a misleading paragraph heading *(cf. Florence v Merchants Cent. Alarm Co.,* 51 NY2d 793). To the extent the defendant intended the no-damage-for-delay provision to relieve it from liability for delay attributable to its negligence, it is violative of the aforenoted prerequisites for enforceability.

A no-damage-for-delay clause must be construed strictly against the drafter of the provision, in this case the defendant *(see, Ippolito-Lutz, Inc. v Cohoes Hous. Auth.,* 22 AD2d 990) and the cause or reason for the delay must be within the contemplation of the parties at the time the contract was executed before it will bar a claim for damages *(Corinno Civetta Constr. Corp. v City of New York,* 67 NY2d 297; *Kalisch-Jarcho, Inc. v City of New York,* 58 NY2d 377).

The no-damage-for-delay clause cannot be read out of context. The first portion of the "Uncontrollable Circumstance" paragraph excuses delays in performance "by reason of flood, riot, strike, war or other cause beyond the control of [the defendant]." Applying the rule of *ejusdem generis,* the comprehensive words "other cause beyond the control" of the defendant are restricted to some extraordinary cause analogous to the specifically named contingencies and not to problems which must naturally be anticipated as to performance *(see, Traylor v Crucible Steel Co.,* 192 App Div 445, *affd* 232 NY 583). Since a definite date for the cutover (May 18, 1984) was fixed in paragraph 1 of the agreement, so much of the no-damage-for-delay clause which stated "[i]t is also understood that all delivery and installation dates, and the intended cutover date are approximate," indicate that the parties intended that the defendant would have a reasonable time after May 18, 1984, to install a functioning telephone system. Since the first portion of paragraph 7 excuses the defendant from delays it may sustain by reason of extraordinary and unanticipated causes, the parties must have intended the no-damage-for-delay clause to apply to delay *sustained* by the defendant due to causes within the contemplation of the parties at the time the contract was entered into, which would preclude the defendant from completing performance by May 18 or a reasonable time thereafter. Any other construction would render the no-damage-for-delay clause repetitious and meaningless. However, it cannot be assumed from such a general no-damage-for-delay clause that it was intended to bar a claim for damages for delay caused by the defendant's breach of an essential or fundamental obligation of its contract. Such an intent requires explicit language *(see, Johnson v City of New*

*York,* 191 App Div 205, *affd* 231 NY 564; *Bianchi & Co. v State of New York,* 17 AD2d 38, *rearg denied* 17 AD2d 896, *affd* 28 NY2d 536; *Wilson & English Constr. Co. v New York Cent. R. R. Co.,* 240 App Div 479; *Hawley v Orange County Flood Control Dist.,* 211 Cal App 2d 708, 27 Cal Rptr 478; *McGuire & Hester v City & County of San Francisco,* 113 Cal App 2d 186, 247 P2d 934; *see also, Validity and Construction of "No Damage" Clause With Respect to Delay in Building or Construction Contract,* Ann., 74 ALR3d 187, § 7 [f]). Paragraph 1 of the parties' agreement imposed upon the defendant an affirmative duty to use its "best efforts" to install an operational telephone system by May 18 or within a reasonable time after this intended cutover date. Absent more explicit terms, the "under no circumstances" language of paragraph 7's no-damage-for-delay provision cannot, under the rule of strict construction, be read expansively to include delays *caused* by the defendant's breach of such an affirmative and fundamental duty.

As to paragraph 4 of the contract, entitled "Warranty," the obvious purpose was to provide a limited warranty with respect to the equipment sold by the defendant to the repair and replacement of defective parts and to preclude recovery for incidental and consequential damages. This is a plausible allocation of the risk of defective equipment which the parties could reasonably have had in mind *(see, Cayuga Harvester v Allis-Chalmers Corp.,* 95 AD2d 5, 14-15). Similarly, the allocation of risks for delay *sustained* by the defendant, which precluded it from installing a functional telephone system by May 18 or a reasonable time thereafter, despite its good-faith efforts, would also logically be placed upon the plaintiff. However, it defies reason to suppose that the plaintiff, highly dependent on telephone service to remain in business, could have intended to assume the risks of delay *caused* by the defendant's negligence or breach of its affirmative duty to use its best efforts to install an operational system by May 18 or within a reasonable period thereafter. A contrary construction regarding the allocation of risk for delay would leave the plaintiff without any fair remedy for the defendant's breach of a fundamental obligation of its contract.

Accordingly, so much of the paragraph 7 captioned "Uncontrollable Circumstances", as stated that the defendant "shall under no circumstances be liable for damages—special, consequential, or otherwise—resulting from delays in delivery, installation or cutover" is strictly construed to bar only claims by the plaintiff to recover damages for delays sustained by the

defendant but not for delays caused by the defendant. Since the facts regarding the cause of the delay are in dispute, the legal significance of the no-damage-for-delay clause will have to await a trial *(see, Norman Co. v County of Nassau,* 63 Misc 2d 965; *Matter of Chuckrow Constr. Co. [Horowitz Bros.],* 30 AD2d 789). Niehoff, J. P., Rubin, Kunzeman and Spatt, JJ., concur.