*389 OPINION OF THE COURT
Bellacosa, J.
This appeal addresses the effort of the Metropolitan Transportation Authority (MTA) to shift to Orange County the cost of MTA’s $369,733 settlement of a negligence action brought by a commuter who was seriously injured in a slip and fall on an icy platform at the Goshen Metro North station. MTA relied on Public Authorities Law § 1277 to certify a "total cost” of $568,975 for the operation, maintenance and use of the seven Metro North (an MTA subsidiary) passenger stations in Orange County for the fiscal year ending March 1986. Sixty-five percent of the total was attributable to the Goshen station for the one-time negligence settlement of the action arising out of the 1982 accident and underlying this offshoot litigation. MTA billed Orange County $47,671 for snow and ice removal for the fiscal year at issue; $8,350 for the station where the accident occurred. Officials of Orange County first learned of the settlement when they received the MTA bill charging the county for the ultimate payment.
The lean legal question is whether the MTA settlement cost is part of the statutorily reimbursable "total cost * * * of operation, maintenance and use”. We hold it is not.
Public Authorities Law § 1277 pertinently provides: "The total cost to the authority and each of its subsidiary corporations of operation, maintenance and use of each passenger station within the district serviced by one or more railroad facilities of the authority or of such subsidiary corporation, including the buildings, appurtenances, platforms, lands and approaches incidental or adjacent thereto, shall be borne by the city of New York if such station is located in such city or, if not located in such city, by such county within the district in which such station is located.” This statute allows MTA to determine annually the "total cost” and to certify the amount for payment to the appropriate municipal government. If unpaid, the MTA may intercept unrelated State aid to counties by certification that the State Comptroller withhold the due sums.
In this case, Orange County objected to the inclusion of the settlement in the "total cost” calculation. MTA rejected the objection and exercised its enforcement and collection author *390 ity, directing the Comptroller to withhold and pay over to MTA $568,975 from Orange County’s next State aid allotment. The county brought this article 78 proceeding challenging as arbitrary and capricious the MTA’s inclusion of the settlement cost. Supreme Court dismissed the county’s petition and the Appellate Division affirmed, without opinion. We granted leave to appeal and reverse.
Petitioner Orange County concedes its statutory fiscal responsibility for the "total cost * * * of operating], maintaining] and us[ing]” the MTA passenger stations within its borders. It protests the proposition that the Legislature, in enacting the "total cost” pass-through of Public Authorities Law § 1277, intended to include also the amounts for settlement of personal injury suits arising out of negligent operation, maintenance or use of a station.
This case turns solely on statutory interpretation. Since "specialized knowledge is not necessarily implicated,” the lower courts erroneously deferred to MTA’s interpretation of this statute as their rationale for dismissing the county’s article 78 proceeding (Matter of Industrial Liaison Comm. v Williams, 72 NY2d 137, 144; Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459).
The Legislature did not precisely define the "total cost” phrase of Public Authorities Law § 1277. Indeed, the term is not susceptible to precise definition, "[r]ather it [is] a responsible political determination as to the fair apportionment of the economic burden of the costs of mass transportation.” (Metropolitan Transp. Auth. v City of New York, 39 NY2d 953, 954, affg 47 AD2d 10.)
In construing the "total cost” language, we must reflect that a totality is not necessarily all encompassing. Words of limitation follow the phrase in this statute which, by their plain meaning and unambiguous usage (see, Matter of State of New York [Abrams] v Ford Motor Co., 74 NY2d 495, 500 [and cases cited]), show that only the "total cost * * * of operation, maintenance and use” (emphasis added) of the station is certifiable. To allow "total cost” to be operative as if in some vacuum alone, without considering the intended meaning of these words of limitation, is illogical and unreasonable. Otherwise, the words of limitation, referable to an actuarially predictable cost framework based on previous years’ cost of operation, maintenance and use and based on comparable station operations, would be lost. Worse still, exposure to *391 negligence awards and unilateral settlements of lawsuits, which are notoriously open-ended, would preclude prudent planning by municipalities in their budgetary and tax obligations. Adopting the MTA’s position in this case therefore results in an overreach and a distortion of the "fair” political distribution of fiscal burden. We cannot attribute to the Legislature a reallocation of this magnitude by implication or by afterthought.
Still, we acknowledge that the salaries of "employees whose work is in connection with the use of the stations by passengers” and expenditures for cleaning tracks wholly within a station are clearly within the statutory "total cost” (Metropolitan Transp. Auth. v City of New York, 32 AD2d 197, 199-200, mod on other grounds 26 NY2d 817). Also, revenues derived by MTA from its stations by way of concession fees, real estate income and contributions from out-of-State transportation authorities may not be deducted from MTA’s "total cost” of operating, maintaining and using its passenger stations (Metropolitan Transp. Auth. v City of New York, 39 NY2d, supra, at 954). On the other hand, expenses — very large ones — can arise at rail stations without being attributable to the station’s operation, maintenance or use (see, Matter of Pattison v Metropolitan Transp. Auth., 133 Misc 2d 592, 605, affd 143 AD2d 191, lv denied 73 NY2d 703 [cost of settling wrongful death claim resulting from negligent railroad, as contrasted to station, operation not certifiable under Public Authorities Law § 1277]).
Undaunted, MTA asserts that because section 1277 states the station costs "shall” be borne by the county in which the station is located, MTA has no choice but to bill a county for what MTA determines to be "total” costs, even if those costs are significantly increased by unforeseen events such as harsh weather or labor unrest. Assuming the latter examples are correct, they have no relevancy to the inclusion of settlements of negligence actions in "total cost” certifications. Here, we are dealing not with an unforeseeable event, but with an expenditure necessitated by an alleged act of negligence, the essence of which is foreseeability (Palsgraf v Long Is. R. R. Co., 248 NY 339, 344).
To transfer the fiscal burden of negligence settlements would add a significant unarticulated dimension to Public Authorities Law § 1277 — that of an indemnification nature. There is no legislative history or evidence that the Legislature *392 understood or wished to confer such an additional benefit on the MTA at the expense of helpless local municipalities and their taxpayers. Indemnification creates a substantially different juridical and political relationship between a myriad of municipalities and a super entity, the MTA. Had the Legislature wished to do this, giving MTA’s theory some arguable weight in this regard, the Legislature would have and should have expressed that choice, with its fundamental fiscal impact, in unmistakably clear and specific language, as it has done elsewhere (see, e.g., General Municipal Law §§ 50-b, 50-d). Since the Legislature has erected a definitive notice of claim protection for municipalities before tort claims against them may succeed (see, General Municipal Law § 50-e), it would be grossly anomalous to allow indirectly what would be blocked directly. Had the injured plaintiff sued Orange County in the corresponding time frames involved here, he would surely have been barred by failure to timely notify the county (General Municipal Law § 50-e) and perhaps even by the applicable Statute of Limitations (General Municipal Law § 50-i [1] [c]). MTA would effectively bypass and undermine especially the notice protection by simultaneously notifying and billing the county four years after the claim was made in this case.
In disclaiming the payment responsibility for the settlement it negotiated, MTA also points a finger at Consolidated Rail Corporation (Conrail), which operated the Goshen station at the time of the accident. MTA customarily paid Conrail to operate the station and then certified expenses to the counties. MTA did not purchase liability insurance for the Goshen station until it took over direct operation from Conrail. MTA urges that because it assumed Conrail’s tort liability, the county must a fortiori assume MTA’s tort liability (respondent’s brief, at 21, n 6). However, MTA’s argument backfires because MTA expressly assumed tort responsibility pursuant to its separate service contract with Conrail. There was no such contractual assumption between MTA and Orange County. Moreover, had there been such an agreement, the contractual language would have to have evinced an "unmistakable intention” to indemnify before a court would enforce such an obligation (see, e.g., Hooper Assocs. v AGS Computers, 74 NY2d 487, 491-492; Levine v Shell Oil Co., 28 NY2d 205, 210). By parallel analysis, the statute at issue surely lacks that specificity requirement and broad interpretative strokes cannot fill the gap.
To be sure, certain liability insurance premiums are also *393 within the statutory "total cost” of station operation (Metropolitan Transp. Auth. v County of Nassau, 35 AD2d 739, affd 28 NY2d 385). They are reasonably predictable and containable for cost planning purposes and projections and are thus quite different in kind, not just in amount, from what MTA has attempted to recoup here by operation of section 1277, which is to make the counties insurers of MTA and self-insurers as to themselves and their taxpayers. This practical fallout is especially repugnant inasmuch as the county was given neither notice, opportunity, nor even the courtesy of participating in the negotiation of the settlement itself which it was ordered to pay (see, and compare, the protections of General Municipal Law § 50-e).
Local municipalities and their taxpayers were not meant to be at the unilateral mercy of a super public benefit corporation in this respect. MTA, under its self-defining arrangement and implementation, has no incentive to employ vigorous methods of investigation of claims, reduction of settlement amounts or resistance to the ultimate point of trial — so long as it can pass along the full uninsured cost (at the time of this accident) to some other entity without worry to itself. Direct accountability in government and in tort responsibility is key to a reasonable interpretation and application of the statute under review. That principle would be severely compromised were we to uphold MTA’s argument and the lower courts’ rulings.
The order of the Appellate Division should be reversed, with costs, and the petition granted.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order reversed, etc.