921 F.2d 453
 Ronald HAYNES and Keisha Haynes, Plaintiffs,
v.
KLEINEWEFERS AND LEMBO CORPORATION, Defendants.
LEMBO CORPORATION, Third-Party-Plaintiff,
v.
KALEX CHEMICAL PRODUCTS, INC., Third-Party-Defendant.
KALEX CHEMICAL PRODUCTS, INC., Fourth-Party-Plaintiff-Appellee,
v.
W.R. GRACE AND CO., Fourth-Party-Defendant-Appellant.
 No. 134, Docket 90-7381.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 12, 1990.
Decided Dec. 21, 1990.
 
 Michael F. Close, New York City (Barry, McTiernan & Moore, New York City, of counsel), for fourth-party-defendant-appellant.
 Steven B. Prystowsky, New York City (Eric A. Portuguese, Lester Schwab Katz & Dwyer, New York City, of counsel), for fourth-party-plaintiff-appellee.
 Before KAUFMAN, WINTER and MINER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 W.R. Grace and Co.-Conn. ("Grace"),[1] fourth-party-defendant-appellant, appeals from a summary judgment entered in the United States District Court for the Eastern District of New York (Korman, J.), dismissing its counterclaim against fourth-party-plaintiff-appellee Kalex Chemical Products, Inc. ("Kalex"). In its counterclaim, Grace sought indemnification from Kalex for sums paid out in settlement of a personal injury suit in which it was impleaded. In its fourth-party complaint, Kalex alleged that Ronald Haynes, a Kalex employee, was injured while using a negligently modified precision calender machine that had been sold to Kalex "AS IS" as part of a 1978 Sale and Purchase Agreement ("Sales Agreement") by Grace. Grace's claim for indemnification was based on the assumption of liabilities clause contained in the Sales Agreement. The district court found that Grace failed to establish that it was the "unmistakable intent" of the parties that Kalex would indemnify Grace for Ronald Haynes' injury resulting from Grace's own negligence. Consequently, the district court dismissed Grace's counterclaim for indemnification.
 
 
 2
 We hold that the district court did not err in finding that the agreement between the parties did not include the indemnity obligation urged by Grace.
 
 BACKGROUND
 
 3
 The parties stipulated to the following facts. On March 31, 1987, Ronald Haynes suffered serious injury when his arm was caught between the calender and stripper rollers on a precision calender machine owned by Kalex as he attempted to cut off a piece of plastic wrapped around one of the rollers. "Calender" is a generic term for a machine with multiple roll mills. A calender presses cloth, paper, plastics and other materials under rollers for the purpose of smoothing or glazing. As a result of the accident, Ronald Haynes' arm was severely burned and mangled and ultimately had to be amputated.
 
 
 4
 The precision calender machine that injured Ronald Haynes was manufactured by a German company, Kleinewefers GmbH ("Kleinewefers"), which had sold the machine in 1962 to Gordon Lacey Chemical Products, Inc. ("Gordon Lacey"). Gordon Lacey installed the precision calender machine at a plant in Maspeth, Queens, the site of Ronald Haynes' injury. In 1968, Gordon Lacey sold to Elm Coated Fabrics ("Elm Coated"), a unit of Grace's Hatco Plastics Division ("Hatco Plastics"), the Maspeth plant, which included the precision calender machine. In November 1968, Elm Coated decided to replace the "stripper" rollers of the precision calender machines that were used to produce vinyl film and sheeting. Elm Coated personnel designed and mounted the stripper rollers in a joint project with defendant Lembo Corporation ("Lembo"), which fabricated the equipment. The new stripper rollers were placed on the precision calendar machines, including the one manufactured by defendant Kleinewefers and purchased by Gordon Lacey in 1962.
 
 
 5
 In 1978, Kalex and its parent corporation, BIM Equities, Inc., purchased the Elm Coated unit of Grace's Hatco Plastics Division. As a part of that purchase, Kalex acquired the modified precision calender machine. Both section 1.13 of the Sales Agreement and exhibit A to the Buyer's Assumption Agreement ("Assumption Agreement"), provided for the assumption by Kalex of certain enumerated liabilities as well as
 
 
 6
 other obligations and liabilities arising in the ordinary course of the Hatco Plastics Business, whether prior to or after the date of the Closing, other than Excluded Liabilities[.]
 
 
 7
 Additionally, section 8.01 of the Sales Agreement provided that Kalex would accept from the Hatco Plastics Division the assets of Elm Coated "AS IS."
 
 
 8
 On July 7, 1987, Ronald Haynes commenced an action against Kleinewefers and Lembo to recover damages for injuries sustained in the March 31 accident. Haynes pleaded claims of negligence and strict products liability. Keisha Haynes, wife of Ronald Haynes, sued Kleinewefers and Lembo in the same action for loss of consortium. Lembo impleaded Kalex in a third-party action, and Kalex instituted a fourth-party action against Grace. In the fourth-party action, Kalex sought contribution and/or indemnification from Grace, alleging that Grace was liable for the negligent modification of the precision calender machine, which Haynes was operating at the time of his injury. Grace interposed a counterclaim against Kalex, alleging that it sold the assets "AS IS" and that any acts of its Elm Coated unit that contributed to the accident "arose in the ordinary course of the Hatco Plastics Business." Grace contends that Kalex expressly assumed this type of liability under the Sales Agreement and Assumption Agreement and was "obligated to indemnify and hold GRACE harmless for any liabilities which it assumed, and this obligation includes reasonable attorney's fees."
 
 
 9
 On September 14, 1988, Ronald and Keisha Haynes settled their claims for approximately $2,300,000. Of that amount, Kalex contributed $880,000 and Grace $440,000. As part of the settlement, Grace reserved the right to pursue its counterclaim against Kalex for indemnification. The district court thereafter granted Kalex's motion for summary judgment and dismissed Grace's counterclaim. It held that Grace had "failed to meet the burden New York law imposes of establishing that it was the 'unmistakable intent' of both parties to the agreement to provide for indemnification for damages resulting from Grace's negligence in altering one of the machines it transferred to Kalex." The court also found that the modification of the calender machine was not "of the kind that immediately strike[s] one as arising in the ordinary course of" the Hatco Plastics business. Finally, the court found that Kalex's agreement to purchase the calender machine "AS IS" had no direct relevance to Grace's claim for indemnification because that clause gave "Grace no more right to indemnification from Kalex than it gave Grace immunity from suit by Haynes."
 
 DISCUSSION
 
 10
 When a claim is made that a duty to indemnify is imposed by an agreement, that agreement must be strictly construed so as not to read into it any obligations the parties never intended to assume. Levine v. Shell Oil Co., 28 N.Y.2d 205, 211, 269 N.E.2d 799, 802, 321 N.Y.S.2d 81, 85 (1971). In the absence of a duty to indemnify imposed by law, a negligent party has no right to be indemnified unless the right is contractually-derived. Express language need not be used as long as the contract demonstrates an "unmistakable intent" to indemnify the negligent party. Kurek v. Port Chester Housing Auth., 18 N.Y.2d 450, 456, 223 N.E.2d 25, 27, 276 N.Y.S.2d 612, 615 (1966) ("all claims and demands ... of whatsoever kind or nature" found to demonstrate "unmistakable intent"). The unmistakable intent standard, introduced in Kurek, was recently reiterated in Heimbach v. Metropolitan Transp. Auth., 75 N.Y.2d 387, 553 N.E.2d 242, 553 N.Y.S.2d 653 (1990), where the New York Court of Appeals noted that in an indemnity agreement "the contractual language would have to ... evince[ ] an 'unmistakable intention' to indemnify before a court would enforce such an obligation." Id. at 392, 553 N.E.2d at 246, 553 N.Y.S.2d at 657 (citing Hooper Assocs. v. AGS Computers, 74 N.Y.2d 487, 491-92, 548 N.E.2d 903, 905, 549 N.Y.S.2d 365, 367 (1989); Levine, 28 N.Y.2d at 210, 269 N.E.2d at 802, 321 N.Y.S.2d at 85).
 
 
 11
 Grace relies on Hogeland v. Sibley, Lindsay & Curr Co., 42 N.Y.2d 153, 366 N.E.2d 263, 397 N.Y.S.2d 602 (1977) for the proposition that the unmistakable intent standard is no longer the applicable standard and that New York now applies a less rigorous one. However, Grace's reliance on Hogeland is misplaced. In Hogeland the Court of Appeals held that, in the context of business transactions negotiated at arms-length, a court must carefully scrutinize the agreements for an expression of the " 'unmistakable intent of the parties'.... [and that it would] suffice[ ] that the agreement between the parties connotes an 'intention to indemnify [which] can be clearly implied from the language and purposes of the entire agreement.' " Id. at 159-60, 366 N.E.2d at 266, 397 N.Y.S.2d at 606 (quoting Levine, 28 N.Y.2d at 212, 269 N.E.2d at 801, 321 N.Y.S.2d at 85; Margolin v. New York Life Ins., 32 N.Y.2d 149, 153, 297 N.E.2d 80, 82, 344 N.Y.S.2d 336, 339 (1973)). That case does not enunciate a new standard as Grace suggests, but rather clarifies the old one. The court in Hogeland reiterated the need to identify the unmistakable intent of the parties; it merely added the unexceptional observation that the intent can be implied from the purpose and language of the whole agreement. See Heimbach, 75 N.Y.2d at 392, 553 N.E.2d at 246, 553 N.Y.S.2d at 657; Hooper, 74 N.Y.2d at 491-92, 548 N.E.2d at 905, 549 N.Y.S.2d at 367. The contract between Grace and Kalex does not support a clear implication of an unmistakable intent to indemnify.
 
 
 12
 As previously noted, both the Sales Agreement and the Assumption Agreement provide for the assumption by Kalex of other obligations and liabilities arising in the ordinary course of business. Grace asserts that its modification of the precision calender machine was performed in the ordinary course of business. Because Kalex expressly assumed "other obligations and liabilities arising in the ordinary course of the Hatco Plastics Business, whether prior to or after the date of the Closing," Grace contends that Kalex assumed liability for the injury that ultimately occurred to Ronald Haynes. Grace argues that the phrase, "ordinary course of business," "encompass[es] ... liability for personal injury [occasioned by] a defect in a product."
 
 
 13
 Grace urges us to accept its contention that modification of the calender machine was undertaken in the ordinary course of business. Yet the structural framework of the Sales Agreement and the Assumption Agreement belies that contention. Before referring to liabilities incurred in the ordinary course of the Hatco Plastics' business, the parties enumerated certain liabilities that the purchaser would assume. These include orders for sales that were accepted by Elm Coated (section 1.13(b)(i)), orders for goods and services that were made by Elm Coated (section 1.13(b)(ii)), and capital expenditures by Elm Coated (section 1.13(b)(iii)).
 
 
 14
 Directly following these three provisions is the "other obligations and liabilities arising out of the ordinary course of the Hatco Plastics Business" provision. The use of the term "other" indicates that "other obligations and liabilities" assumed are "of like kind" as those mentioned previously. See Black's Law Dictionary 992 (5th ed. 1979) ("Following an enumeration of particular classes 'other' must be read as 'other such like,' and includes only others of like kind and character."). When a general provision is used in a contract, it is well settled that "to be included within the 'general' phrase, anything not specifically mentioned must have a reasonable degree of similarity to those mentioned." 3 Corbin, On Contracts Sec. 552 (1960); Forward Indus. v. Rolm of New York Corp., 123 A.D.2d 374, 376, 506 N.Y.S.2d 453, 455 (2d Dep't 1986) ("Applying the rule of ejusdem generis, the comprehensive words 'other causes beyond the control' of the defendant are restricted to some extraordinary cause analogous to the specifically named contingencies...."). Kalex correctly contends that the negligent modification of a calender machine bears no similarity to the business transactions set forth in the provisions directly preceding the provision upon which Grace relies.
 
 
 15
 Grace does not contend that the language at issue expressly entitles it to indemnification. Rather, it relies on the "ordinary course" provision and the contract as a whole to support its interpretation. While the provision might be interpreted to include modification of calender machines as an activity arising in the ordinary course of business, there cannot be clearly implied from the language used and the overall purpose of the contract the necessary "unmistakable intent" to indemnify. Although other activities that are not listed in the contract may be considered to arise in the ordinary course of business, neither the language used in the provision relied on, nor the language in conjunction with the structure and overall purpose of the contract clearly implies such a result.
 
 
 16
 Grace also relies on Bouton v. Litton Indus., 423 F.2d 643, 650-52 (3d Cir.1970) (applying New York law), in support of its contention that the negligent modification falls within the meaning of the "other obligations and liabilities" provision. Its argument is that Kalex, as a successor corporation, assumed Grace's liabilities that arose in the ordinary course of business. Grace's reliance on that case is, however, without foundation. In Bouton, the Third Circuit found that defendant Litton Industries expressly assumed all future products liability claims brought against the predecessor corporation, M-T, because M-T transferred its products liability insurance to Litton. Id. at 652. The "ordinary course of business" clause, which appeared in the contract, was not the key to the court's conclusion, however. Rather, the court found that all of the contracts that were entered into by M-T in "the regular and ordinary course of M-T's business," including its products liability insurance contract, were assumed by Litton. Id. The products liability claim that arose after the closing date, therefore, was assumed by Litton not because it arose in the ordinary course of business, but because the sales agreement expressly provided for the transfer of products liability insurance. Under the circumstances of that case, the court concluded that "[c]learly the parties envisioned that the risk of insuring against claims arising from future accidents was one which was assumed by the party carrying on the transferred business." Id.
 
 
 17
 With respect to the doctrine of successor corporate liability, the New York Court of Appeals has held that the doctrine is "irrelevant to the question of indemnification or liability as between the seller and purchaser" and that a right to indemnification is entirely dependent on the terms of the agreement. Grant-Howard Assoc. v. General Housewares Corp., 63 N.Y.2d 291, 297, 472 N.E.2d 1, 3, 482 N.Y.S.2d 225, 227 (1984). The court found that "[a] sale of assets does not vitiate the original company's liability," although "[t]he companies can regulate how such liability will be allocated among themselves" by the terms of their sales agreements. Id. Therefore, Grace may shift the risk of products liability claims to Kalex, but it must do so by means of a contract wherein an intent to accomplish that purpose is specifically expressed or clearly implied.
 
 
 18
 A catch-all phrase such as "other obligations and liabilities arising in the ordinary course of business" fails to establish clearly an unmistakable intent to assume an obligation to indemnify. Cf. Rosado v. Proctor & Schwartz, Inc., 66 N.Y.2d 21, 27, 484 N.E.2d 1354, 1358, 494 N.Y.S.2d 851, 855 (1985). It simply cannot be clearly implied from the contract that the parties intended to consider the modification of machines used in manufacturing operations as an activity conducted in the ordinary course of business of Hatco Plastics. Hooper, 74 N.Y.2d at 491-92, 548 N.E.2d at 905, 549 N.Y.S.2d at 367 ("Although the words [in a contract] might 'seem to admit of a larger sense, ... they should be restrained to the particular occasion and to the particular object which the parties had in view.' "). As noted previously, that catch-all phrase provides for the assumption of obligations and liabilities arising from customary business transactions such as orders for goods and services, capital expenditures and the like. See Heimbach, 75 N.Y.2d at 390, 553 N.E.2d at 244, 553 N.Y.S.2d at 655 (interpreting N.Y.Pub.Auth.Law Sec. 1277, court found that words of limitation following the term "total costs," demonstrated that it was not the "unmistakable intent" of the legislature to impose an indemnity obligation for payments in settlement of personal injury actions on municipalities). The contract under scrutiny fails to express or imply clearly the unmistakable intent required, and the "broad interpretive strokes" urged by Grace cannot "fill the gap." Id. at 392, 553 N.E.2d at 246, 553 N.Y.S.2d at 657.
 
 
 19
 Grace also contends that the "AS IS" provision read in conjunction with the other provisions indicates the parties' intent to place the entire responsibility for the condition of the transferred assets, including the negligently modified precision calender machine, on Kalex. See N.Y.U.C.C. Sec. 2-316 & official comment 7 (McKinney 1964). However, section 2-316 relates to disclaimers of warranties for goods sold, not to indemnification. See Alger v. Abele Tractor & Equip. Co., 92 A.D.2d 677, 460 N.Y.S.2d 202 (3d Dep't 1983). In Alger, the court refused to equate an "AS IS" disclaimer with a disclaimer of liability. It found that the "AS IS" disclaimer was irrelevant to the question of whether a party is obligated to indemnify.
 
 
 20
 The district court therefore properly found that the "AS IS" disclaimer does not support Grace's claim to a right to indemnification. Because an "AS IS" disclaimer cannot immunize a party from strict products liability, Alger, 92 A.D.2d at 678, 460 N.Y.S.2d at 203, we fail to see how it transforms, as Grace urges, the assumption of "other obligations and liabilities" clause into one including the obligation to indemnify.
 
 CONCLUSION
 
 21
 The judgment of the district court is affirmed.
 
 
 
 [1]
 W.R. Grace & Co., the original party to this action, changed its corporate name in 1989 to W.R. Grace & Co.-Conn