COMMANDER OIL CORPORATION,
Plaintiff,

v.

ADVANCE FOOD SERVICE
EQUIPMENT, Defendant.

SLATER DEVELOPMENT CORPORA-
TION formerly known as Slater Elec-
tric Inc., Defendant Third–Party Plain-
tiff–Appellant,

v.

PASS & SEYMOUR, INC. and
LEGRAND S.A., Third–Party
Defendants–Appellees.

No. 596 Docket 92–7827.

United States Court of Appeals,
Second Circuit.

Argued Nov. 30, 1992.

Decided April 13, 1993.

Joseph Zuckerman, New York City (Richard G. Leland, Rosenman & Colin, New York City, of counsel), for third-party plaintiff-appellant.

Thomas C. Buckel, Jr., Hancock & Estabrook, Syracuse, NY, for third-party defendants-appellees.

Before: OAKES, WINTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Third-party plaintiff Slater Development Corporation ("Slater") appeals from the July 2, 1992 Order of the United States District Court for the Eastern District of New York (Mishler, J.), that granted summary judgment to third-party defendants Pass & Seymour, Inc. and Legrand S.A. ("PSI") on the ground that, under the language of contracts whereby PSI purchased the business and leased certain properties from Slater, PSI is not obligated to indemnify Slater for environmental liability. We conclude that the language is ambiguous and thus a genuine issue of fact remains. Accordingly, we vacate the grant of summary judgment and remand for proceedings consistent with this opinion.

## Background

Commander Oil Corporation ("Commander Oil"), the owner of a site in Garden City, New York, brought an action to recover environmental response costs for damage to that site against Slater and others pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601, *et seq.* ("CERCLA"). According to the complaint, Slater employed Pasley Solvents and Chemicals, Inc. ("Pasley") to remove industrial waste generated at Slater's Glen Cove, New York facility between 1972 and 1982. Pasley allegedly disposed of the waste illegally at the Garden City site that it had leased from Commander Oil.

The dispute in this case, however, is between defendant Slater and PSI, a third-party defendant that Slater brought into the suit in order to seek indemnification. On September 14, 1987, Slater contracted to sell its business of manufacturing electrical wiring devices to PSI. Under an Asset Purchase Agreement of that date, PSI acquired the business, excluding real estate and other specified assets, and leased Slater's offices and manufacturing facilities located in Glen Cove, New York and Elizabeth, New Jersey. At the January 22, 1988 closing, Slater and PSI signed a ten-year lease covering the Glen Cove and Elizabeth properties (the "Lease").

The Asset Purchase Agreement contains an indemnification clause in which PSI agreed to take over from Slater the defense of certain "litigations" and to indemnify Slater for any liabilities that resulted. PSI's obligation covered certain specified pending lawsuits, as well as "all other litigations occurring from and after the date of signing the Agreement relating to the business and assets being acquired hereunder." At the closing, PSI and Slater signed an Assumption Agreement which restated PSI's defense and indemnification obligations as set forth in the Asset Purchase Agreement.

The Lease also contains indemnification language. Article 23 allocates responsibility between Slater and PSI for environmental liabilities occurring on or about the Glen Cove and Elizabeth premises. PSI agrees to be responsible for contamination arising at the premises during the Lease term and to defend and indemnify Slater for any cleanup costs, losses and damages arising from an "Environmental Event," which the Lease defines as "any events or conditions involving the emission, spill, discharge or cleanup of any hazardous or toxic substance or waste on the premises or ... actual knowledge or notice of any other events or conditions on the premises which could give rise to any such emission, spill, discharge or cleanup...." However, under the Lease, PSI is not responsible for pre-transfer on-site contamination at the Glen Cove or Elizabeth premises.

In its third-party complaint against PSI, Slater seeks a declaratory judgment that PSI is required to assume the defense of the primary action by Commander Oil against Slater and indemnify Slater for costs incurred to date and any ultimate liability. Before any discovery, Slater moved and PSI cross-moved for summary judgment pursuant to Fed.R.Civ.P. 56(c). The district court granted summary judgment in favor of PSI and dismissed Slater's third-party complaint. This appeal followed.

### Discussion

We review the district court's grant of summary judgment to determine whether a genuine issue of material fact exists and whether the law was applied correctly below. *National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199 (2d Cir. 1989). It is well settled that a court should grant a motion for summary judgment only when the evidence, viewed in the light most favorable to the non-moving party, presents no genuine issue of material fact. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir. 1990). There is no material fact issue only when reasonable minds cannot differ as to

the import of the evidence before the court. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Under CERCLA § 107(e)(1), the right of private parties to enter into indemnification agreements is preserved. 42 U.S.C. § 107(e)(1). The district court acknowledged that this was so but then held that the agreements before it did not obligate PSI to defend and indemnify Slater for Commander Oil's CERCLA claim. The district court, holding that the Asset Purchase Agreement and the Lease must be read together, relied upon the absence of specific language referencing environmental liability in the Asset Purchase Agreement's indemnification clause and reasoned that to hold that indemnification for this kind of liability is covered by the Asset Purchase Agreement would render meaningless the "painstaking[ ]" discussion of environmental liability in the Lease. The question raised by this appeal is whether the district court correctly interpreted the indemnification language in the two agreements.

Under New York law, which governs in this case, it is our function to "discern the intent of the parties to the extent their intent is evidenced by their written agreement." *International Klafter Co. v. Continental Casualty Co.*, 869 F.2d 96, 99 (2d Cir.1989), citing *Slatt v. Slatt*, 64 N.Y.2d 966, 967, 488 N.Y.S.2d 645, 646, 477 N.E.2d 1099, 1100, (1985). But in New York indemnification agreements are strictly construed; a court cannot find a duty to indemnify absent manifestation of a "clear and unmistakable intent" to indemnify. *Heimbach v. Metropolitan Transport. Authority*, 75 N.Y.2d 387, 553 N.Y.S.2d 653, 657, 553 N.E.2d 242, 246 (1990). If the parties' intent is unclear from the writing, however, the court is required to consider extrinsic evidence of intent. *Slatt*, 64 N.Y.2d at 967, 488 N.Y.S.2d 645, 477 N.E.2d 1099. We have described such an ambiguity as the absence of "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of

opinion." *Hunt, Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir. 1989) (quoting *Breed v. Insurance Co. of N. Am.,* 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280, 1282 (1978)). The district court, upon reading the Asset Purchase Agreement and the Lease together, found no such absence and, hence, no ambiguity. The court held that the parties never intended that PSI indemnify Slater for environmental liability at the Garden City site.

We turn to the relevant language in the two instruments. The Asset Purchase Agreement provides:

"(b) *Liabilities.* At the Closing, Seller shall assign and transfer to Buyer and Buyer shall assume and agree to pay, perform and discharge and indemnify Seller against (A) all of the liabilities of Seller in the categories set forth on Exhibit 2–B and the contingent liabilities set forth on Exhibit 2–B.1; (B) liabilities and obligations pursuant to the Contracts assigned to Buyer pursuant to this Agreement; ... and (D) all other liabilities specifically assumed by Buyer pursuant to this Agreement.... It is expressly agreed and understood that, except as set forth in this Agreement, Buyer shall not be liable for any obligations, liabilities, claims or causes or actions of Seller of any kind or nature."

Exhibit 2–B.1

CONTINGENT LIABILITIES ASSUMED

1) All product liability matters, to the full extent not covered by Slater's insurance.

2) Coverage of all Slater product warranties and guarantees given in the ordinary course of business.

3) All litigations disclosed on Exhibit 5–N and all other litigations occurring from and after the date of signing the Agreement relating to the business and assets being acquired hereunder.

4) All labor matters disclosed on Exhibit 5–0 and all other labor matters occurring from and after the date of signing the agreement.

\*      \*      \*      \*      \*      \*

The pending litigations listed within Exhibit 5–N were grouped within the following categories: product liability, general liability, patent, and anti-trust.

The Lease covering the Glen Cove and Elizabeth premises, with Slater as Landlord and PSI as Tenant, provides in relevant part:

23. *Representations, Warranties and Covenants.*

23.01 Tenant acknowledges that it is responsible for compliance during the Term with all federal, state and local laws, rules and regulations relating to emission into the air, discharge onto lands and waters, storage and disposal of hazardous or toxic wastes or substances and all other federal, state and local environmental laws, rules and regulations applicable to the premises (collectively, "Environmental Laws"); provided, however, that Tenant shall not be responsible with respect to Environmental Laws for any event occurring or condition existing prior to the commencement of the Term.

\*      \*      \*      \*      \*      \*

23.04 Tenant hereby agrees to defend, indemnify, and hold Landlord harmless from and against any and all claims, losses, liabilities, liens, damages and expenses (including, without limitation, cleanup costs and reasonable attorneys' fees) arising directly or indirectly from, out of, or by reason of an Environmental Law or an Environmental Event affecting Tenant, its operations or the premises. Such indemnification shall only include all claims, losses, liabilities, liens, damages and expenses ... incurred during the Term or after the expiration or earlier termination of the Term if such claims, losses etc. are the result of Tenant's actions or omissions during the Term....

\*      \*      \*      \*      \*      \*

■   At the outset we believe, contrary to Slater's contention, that the district court properly interpreted the Asset Purchase Agreement and the Lease together as if they were a single document. Whether multiple writings should be construed as

one agreement depends upon the intent of the parties. *Lowell v. Twin Disc, Inc.*, 527 F.2d 767, 770 (2d Cir.1975); *Williams v. Mobil Oil Corp.*, 83 A.D.2d 434, 445 N.Y.S.2d 172, 175 (2d Dep't 1981). Generally, separate writings are construed as one agreement if they relate to the same subject matter and are executed simultaneously. *Carvel Corp. v. Diversified Mgmt. Group, Inc.*, 930 F.2d 228, 233 (2d Cir.1991) ("[I]nstruments executed at the same time, by the same parties, for the same purpose and in the course of the same transaction will be read and interpreted together.") citing *Nau v. Vulcan Rail & Constr. Co.*, 286 N.Y. 188, 197, 36 N.E.2d 106, 110 (1941); *see also Rudman v. Cowles Communications, Inc.*, 30 N.Y.2d 1, 13, 330 N.Y.S.2d 33, 280 N.E.2d 867 (1972). Even if the writings are executed at different times, however, Williston tells us that contracts should be interpreted together if "the parties assented to all the promises as a whole, so that there would have been no bargain whatever if any promise or set of promises had been stricken." 6 Williston, *Contracts*, § 863, at 275 (3rd ed. 1970), *cited in, Williams*, 445 N.Y.S.2d at 175. In *BWA Corp. v. Alltrans Exp. U.S.A., Inc.*, the court held that, in the absence of anything to indicate a · contrary intention, "[w]here several instruments constitute part of the same transaction, they must be interpreted together." 112 A.D.2d 850, 493 N.Y.S.2d 1, 3 (1st Dep't 1985). *BWA Corp.* involved a sublease agreement for several floors of an office building and a letter agreement providing that the sublessee pay increased electrical charges to the sublessor. The court held that since the letter agreement expressly referred to the sublease and was executed contemporaneously, the two documents should be treated as one instrument. *Id.* 493 N.Y.S.2d at 3.

■ In this case, the Asset Purchase Agreement relates to the assets and business that Slater sold to PSI, while the Lease involves PSI's rental from Slater of the Glen Cove and Elizabeth premises. However, the two transactions were intertwined. They were component parts of a single business transaction whereby PSI would purchase Slater's business and lease the premises from Slater on which to operate it. Each depended on the other; neither stood alone. The Asset Purchase Agreement expressly states in paragraph 9(6) that "Buyer and Seller shall have entered into a lease for the premises owned by Seller and located in Elizabeth, New Jersey and . . . Glen Cove, New York in the forms attached as Exhibits 8–K.1 and 8–K.2." Similarly, the Lease references the Asset Purchase Agreement. Under these circumstances, the district court was plainly correct to read the two documents together.

■ Slater contends that even if the Asset Purchase Agreement and Lease are interpreted together, the language of the Asset Purchase Agreement, specifically the "catch-all" phrase "all other litigations occurring from and after the date of the Agreement relating to the business and assets being acquired" (Exhibit 2–B.1), clearly manifests the parties' intent that PSI indemnify Slater for any liability under CERCLA. Therefore, Slater argues, the district court erred in failing to grant summary judgment to Slater. We disagree.

Slater supports its motion with, *inter alia*, two Ninth Circuit cases, the first interpreting California law and the second interpreting New York law, that have held that broad provisions referring to assumptions of liability are applicable to CERCLA claims. *Jones–Hamilton Co. v. Beazer Materials & Service, Inc.*, 959 F.2d 126, 129 (9th Cir.1992) (agreement to comply with "all applicable federal, state and local laws, ordinances, codes, rules, and regulations" and to indemnify against all losses, damages, and costs resulting from failure to do so unambiguously applies to CERCLA cleanup costs); *Mardan Corp. v. C.G.C. Music, LTD.*, 804 F.2d 1454, 1461–62 (9th Cir.1986) (settlement agreement which released vendor from "all claims in any way connected with the Purchase Agreement" intended to encompass CERCLA cleanup costs). However, we believe these cases to be inapposite.

In *Jones–Hamilton*, 959 F.2d at 129, the phrase "all applicable Federal, State and

local laws, ordinances, codes, rules and regulations" plainly encompassed federal environmental laws and was considerably broader than the "all other litigations ... relating to the business and assets being acquired hereunder" language of the Asset Purchase Agreement. Moreover, the agreement in *Jones–Hamilton* included no other indemnification language which could call into question the scope of the catch-all provision.

The contractual language in *Mardan Corp.*, 804 F.2d at 1461, is closer to the language in the present case since it does not refer specifically to federal laws; however, *Mardan Corp.* is distinguishable on other grounds. The Settlement Agreement in *Mardan Corp.* absolved the vendor from liability for claims "based upon or arising out of the Purchase Agreement" and released the vendor from all claims "in any way connected" with the Agreement "or with the transactions contemplated thereby." *Id.* The *Mardan Corp.* agreement's broad indemnification language was not compromised by any specific language allocating environmental responsibility. Its sharpest distinction from this case, however, lies in the fact that the district court in *Mardan Corp.* considered extrinsic evidence prior to entering summary judgment, including evidence that the parties specifically addressed the possibility that environmental cleanup might be necessary. *Id.* at 1456–57, 1463.

By contrast, the contracts in the present case, in addition to provisions which could be read to extend indemnification coverage, contain certain provisions which could be read to restrict coverage. The Asset Purchase Agreement states that "it is expressly agreed and understood that, except as set forth in this Agreement, Buyer shall not be liable for any obligations, liabilities, claims or causes of action of Seller of any kind or nature." A fact-finder reasonably might conclude that if the parties intended the phrase "and all other litigations occurring from and after the date of signing the Agreement relating to the business and assets being acquired hereunder," to cover any and all claims of action, this limiting language would not have been included.

In addition, the "and all other litigations" phrase follows "All litigations disclosed on Exhibit 5–N" and the litigations discussed in Exhibit 5–N are confined to certain categories of lawsuits: product liability, general liability, patent, and anti-trust. Exhibit 5–N does not include a category for environmental claims. Thus there is an open question as to whether "all other litigation" was meant to reach beyond the categories disclosed in Exhibit 5–N. These circumstances, when combined with the specific allocation of environmental liability in the Lease, might warrant a conclusion that the parties only intended for PSI to indemnify Slater for environmental liability with respect to the leased premises.

While we cannot accept Slater's claim that, contrary to the district court's disposition, the contractual language unambiguously favors it, we are in accord with Slater's alternative argument that the indemnification language is at least susceptible to an interpretation that the parties intended for PSI to indemnify Slater for CERCLA liability.

The district court concluded that the inclusion of specific language in the Lease reflected a clear understanding between the parties "of the need to allocate environmental liabilities," thereby showing no "unmistakable intent" by PSI to indemnify Slater. While the inclusion of this language in the Lease indicates that the parties were aware of CERCLA liability, this awareness could as easily be taken to mean that PSI agreed to indemnify Slater for "all litigation," including environmental, brought after the signing of the Asset Purchase Agreement relating to the business. The fact that the Lease requires PSI to indemnify Slater for environmental events occurring after the commencement of the Lease, but not for pre-existing conditions, might support Slater's argument that PSI became responsible for all environmental liability arising from the business it purchased. A reasonable fact-finder could conclude that if the parties did not intend for PSI to indemnify Slater for environmental liability arising from the business, they would not

have included the broad provision in the Asset Purchase Agreement.

We are thus unable to say either that the "and all other litigation" phrase of the Asset Purchase Agreement's indemnification provision unequivocally demonstrates an "unmistakable intent to indemnify" Slater for environmental liability, *Haynes v. Kleinewefers and Lembo Corp.*, 921 F.2d 453 (2d Cir.1990), or that the paucity of language specifically referring to environmental liability clearly indicates that the parties did not intend for PSI to indemnify Slater as to Commander Oil's CERCLA claim.

In sum, the indemnification language at issue in the present case, taken alone, does not afford "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Hunt, Ltd.*, 889 F.2d at 1277. We hold that the language of the indemnification provisions in the Asset Purchase Agreement when read in connection with the Lease is ambiguous as a matter of law. Accordingly, we remand the case to the district court to allow the parties to offer extrinsic evidence bearing on the intent of the parties as to PSI's obligation to defend and indemnify.

Conclusion

We affirm the judgment of the district court denying summary judgment to Slater, reverse and vacate the judgment granting summary judgment to PSI and remand for further proceedings.