OPINION OF THE COURT
Peter N. Wells, S.
Petitioner, OnBank & Trust Co. (hereinafter referred to as OnBank), as trustee of Discretionary Common Trust Fund "A” (Equities) of OnBank & Trust Co., and as trustee of Discretionary Common Trust Fund "B” (Fixed Income) of OnBank & Trust Co. (hereinafter collectively referred to as the common trust funds), has petitioned for judicial settlement of its fifth accounting of said common trust funds. Separate guardians ad litem were appointed to represent the interests of the principal and income beneficiaries of each common trust fund. The guardians ad litem have filed virtually identical objections to both accountings. The matter has been presented to the court upon an agreed statement of facts.
There is no dispute that both common trust funds "A” and "B” have invested common trust fund assets in mutual funds. Likewise there can be no dispute that mutual funds charge a fee for the management of the assets under their control as set forth in each prospectus attached to the agreed statement of facts as exhibits.
All the parties have further agreed that the prudent investor rule is not an issue. Clearly the question presented to the court is not the reasonableness of the fiduciary’s investment in mutual funds, but rather the legality of such action.
The objections of the guardians ad litem are twofold: that by investing common trust fund assets in mutual funds, the trustee has violated Banking Law § 100-c (3), 3 NYCRR 22.20 and the funds’ own plan of operation by (1) delegating its management duties and (2) subjecting the common trust funds *765 to management fees of the mutual funds. A two-day hearing was held before the court in which both sides presented expert testimony.
The main thrust of OnBank’s argument is that a letter opinion of the New York State Banking Department (Department) dated May 15, 1995, is controlling. Barbara Kent, an associate attorney with the Department and the author of the Department’s opinion, opined that the investment of common trust funds in mutual funds and payment of mutual fund management fees do not violate Banking Law § 100-c (3) and its concomitant regulation 3 NYCRR 22.20.
The court concurs with the Department that investment in mutual funds by the trustee of a common trust fund does not constitute a delegation of its management duties. The trustee still maintains the ultimate managerial control of the investment by retaining the paramount authority to buy, retain, or sell shares of a mutual fund investment. Nonetheless, Banking Law § 100-c does contain limitations on the trustee so that this authority is not absolute and unlimited.
Banking Law § 100-c (3) provides: "A common trust fund shall not be deemed a separate trust fund on which commissions or other compensation is allowable and no trust company maintaining such a fund shall make any charge against such fund for the management thereof. ” (Emphasis added.)
3 NYCRR 22.20 provides: "Management of common trust fund and fees. A trust company administering a common trust fund shall have the exclusive management thereof and shall not charge a fee for the management of the common trust fund * * * The trust company shall not pay a fee, commission, or compensation out of the common trust fund for management." (Emphasis added.)
Initially, the court notes that the opinion letter was in response to a fact pattern submitted by OnBank’s attorney just prior to the hearing, which asserted that the Funds do not pay any fees of the investment managers or advisers of the mutual funds in which they invest.
The Department’s determination in this regard is based on a misunderstanding of the management costs involved with a mutual fund. Ms. Kent simplistically compared buying shares in a mutual fund with buying shares in an entity such as General Motors (GM). Her theory is that every entity has associated management costs. She testified that a decision to invest in GM is a judgment on its performance and that nothing prevents GM from hiring management consultants thus *766 increasing its management costs. She equated paying a management fee to a mutual fund to the internal management costs associated with buying shares of GM.
The court finds this analysis to be faulty. The Department has ignored the fact that investment in a mutual fund involves an additional layer of management costs, i.e., those of the mutual fund itself. When the trustee of a common trust fund makes a decision to invest fund assets directly in GM, the expense associated with that investment is a brokerage fee, not a management fee. Although there may be internal management costs incurred in the corporate structure of GM which ultimately affect the value of the shares, they are not designated fees for management of the common trust fund’s assets which are invested in the corporation. Rather they are costs incurred in the management of GM itself.
In contrast, an investment in a mutual fund is subjected to an additional layer of fees, one of which is specifically designated a management fee. This fee is the charge imposed for the judgment of the mutual fund manager in regard to investments to be made, in this situation, with assets of the common trust funds. In essence, the common trust fund buys the mutual fund manager’s expertise. Thus, the fees associated with purchasing a mutual fund which in turn buys shares of GM are the initial brokerage fee (also expended in direct purchase of GM) and the extra layer of cost labelled investment, advisory or management fees charged by the mutual fund itself. These extra fees are deducted from the earnings of the mutual fund prior to its remitting the net return on the investment of the common trust fund assets. Moreover, the mutual fund management fee is a continuing one, charged periodically. Thus, by investing in a mutual fund the trustee is subjecting the common trust fund to a fee for management which is prohibited by section 100-c (3) of the Banking Law, 3 NYCRR 22.20 and the funds’ own plan of operation.
The court recognizes that in matters requiring special expertise, opinions of the regulatory agency in charge are entitled to great deference (Matter of Heimbach v Metropolitan Transp. Auth., 75 NY2d 387; Ferraiolo v O’Dwyer, 302 NY 371). However, "[wjhere words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation” (McKinney’s Cons Laws of NY, Book 1, Statutes § 76).
Section 100-c (3) of the Banking Law does not utilize any specialized or technical language or concepts that would mandate *767 that the court defer to the unique expertise of the Banking Department (see, Oneida Sav. Bank v Tese, 108 AD2d 1042). The language "no trust company maintaining such a fund shall make any charge against such fund for the management thereof5 is clear and unambiguous (Banking Law § 100-c [3]). There is no question that the court is required "to give effect to the plain meaning of the words used” (Eaton v New York City Concilation & Appeals Bd., 56 NY2d 340, 345). The court thus finds that the plain language of the statute negates the deference usually given to Banking Department opinions and concludes that no matter how the Department construes its own regulation, 3 NYCRR 22.20, this regulation must be read in conjunction with Banking Law § 100-c (3) which precludes the trustee of a common trust fund from subjecting common trust fund assets to the mutual fund management fees.*
The court must not, when interpreting a statutory right that is nonexistent under common law, restrict or expand upon the legislative creation where a literal construction of the statute complies with the apparent purpose of the law (Matter of MVAIC [Holley], 33 Misc 2d 567). A common trust fund is such a statutory right that was nonexistent under common law. It is elemental that a trustee is normally prohibited from commingling assets of different trusts. In fact, commingling is considered such a serious violation of fiduciary duties that it is grounds for revocation of fiduciary letters (SCPA 719 [7]).
By enacting Banking Law § 100-c, the Legislature intended to allow a bank trustee to circumvent this prohibition and commingle the funds of any number of trust funds. The advantage to the bank of such commingling is that it allows the bank to minimize the number of individual trust accounts to be separately administered by it thereby reducing the bank’s expenses. In return, the Legislature mandated that no fee may be charged for management of the commingled funds. It did so in clear, plain and unambiguous language.
The statute does not provide however, as OnBank argues, that the trustee itself is only prohibited from charging a fee for its own management services. The statute clearly states *768 that the trustee is not allowed to "make any charge against such fund for the management thereof’ (Banking Law § 100-c [3]; emphasis added). There are no exceptions in the statute to this prohibition. The Legislature, by the very wording of this statute, intended that no commissions or compensation be paid to any entity for the management of common trust fund assets. Since OnBank itself is not entitled to a fee for managing the common trust fund, it may not permit someone else to charge a fee for management services and thereby lessen the net return on the common trust fund’s assets by the amount so charged. This is in effect what it has done by investing in mutual funds. It is elemental that what cannot be done directly cannot be done indirectly.
It is a basic tenet of statutory interpretation that "[t]he courts in construing statutes should avoid judicial legislation; they do not sit in review of the discretion of the Legislature or determine the expediency, wisdom or propriety of its action on matters within its powers’’ (McKinney’s Cons Laws of NY, Book 1, Statutes § 73). In short the plain and unequivocal language of Banking Law § 100-c (3) cannot be judicially repealed or rendered obsolete by a strained interpretation thereof by either the court or the Banking Department.
In this light, the court finds OnBank’s reliance on Matter of New York State Assn. of Life Underwriters v New York State Banking Dept. (83 NY2d 353) in support of its position to be misplaced. In Underwriters, the Court of Appeals allowed State-chartered commercial banks to broker or sell annuities. The present matter differs from Underwriters in that a common trust fund is not a developing commercial activity, but rather solely a creature of statute. The court finds that to uphold the Department’s interpretation of Banking Law § 100-c (3) in this situation would require expansion of the statute to include concepts the Legislature has not yet seen fit to enact in regard to its own creation — the common trust fund.
Indeed, and equally as limiting, the very language of the plans of operation provides that "[t]he Bank shall not charge any fee for the management of the Fund * * * [t]he Bank shall not pay any fee, commission or compensation out of the Fund for the management thereof’ (plans of operation of Discretionary Common Trust Funds "A” & "B”, at 5 [emphasis added]). Thus, the terms of the common trust funds themselves, too, prohibit the trustees from charging or paying any management fee from the funds.
This court makes no determination as to the prudency of the investment of common trust funds in mutual funds. Nor does *769 the court seek to prohibit common trust funds from investing in mutual funds provided that any management fees charged by the mutual funds be absorbed by the trustee itself.
Accordingly, based on the above analysis, the court finds that the management fees charged by the mutual funds invested in by the trustee, as well as any reduction of profit resulting therefrom, must be reimbursed by the trustee to the common trust funds. The court directs that a further hearing be conducted forthwith to determine the amount to be so surcharged against the trustee for the period encompassed within the accountings.

 3 NYCRR 22.20 in accordance with Banking Law § 100-c (3) in fact prohibits a trust company from paying management fees out of a common trust fund. However, the regulation qualifies this prohibition somewhat by specifying that "[n]othing in this section shall be construed as prohibiting a trust company from reimbursing itself out of a common trust fund for such reasonable expenses incurred by it in the administration thereof’. It is clear in the present situation that the management fees of a mutual fund are not considered administration expenses contemplated by the regulation.