■ RIVER SEAFOODS, INC., Respondent, v JPMORGAN CHASE BANK, Appellant. [796 NYS2d 71]—

Judgment, Supreme Court, New York County (Charles J. Tejada, J.), entered September 5, 2003, which, in this special enforcement proceeding pursuant to CPLR article 52, to the extent appealed from as limited by the briefs, awarded petitioner $43,158.88 in compensatory damages, affirmed, with costs. Appeal from order, same court and Justice, entered on or about July 7, 2003, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

The facts in this proceeding are undisputed and straightforward. In 1998, petitioner River Seafoods, Inc. obtained a judgment against Touris Products, Inc. in the amount of $44,931.88. After learning that Touris maintained a business checking account with respondent JPMorgan Chase Bank, on or about October 9, 2002, River served a restraining notice on Chase pursuant to CPLR 5222 and an information subpoena pursuant to CPLR 5224 relative to Touris's business checking account.

Chase responded by letter dated October 18, 2002. Chase ignored the information subpoena and instead returned a one-page form letter which stated: "Pursuant to the document notice served upon the Bank, a hold has been placed on the judgment debtor(s) account(s)." Chase also included information pertaining to the Touris business checking account, including the title, number, type and status of the account. The account status was marked "ACTIVE" and under comments Chase wrote "NO FUNDS AVAILABLE."

On December 26, 2002, River's counsel wrote Chase, noting receipt of Chase's October 18, 2002 response, stating that he trusted the Touris account remained restrained, and asking for a response to the information subpoena.

By letter dated January 2, 2003, Chase again advised River that "a hold has been placed on the judgment debtor(s) account(s)." The letter also indicated that $2,140.22 was being held. This time, Chase partially responded to the information subpoena.

On January 24, 2003, petitioner served a subpoena duces tecum on Chase, seeking account statements and cancelled checks for the Touris account. From Chase's response to this subpoena, River learned that on December 10, 2002 Touris's account was credited with two wire transfers totaling $46,962. The statements also showed that prior to the wire transfers, the account was replete with entries for insufficient funds fees.

On March 6, 2003, the Westchester County Sheriff served Chase with a property execution, levying on the Touris account. Thereafter, the Westchester County Sheriff received from Chase $1,773, which it forwarded to River.

By verified petition dated April 8, 2003, River commenced a special proceeding against Chase pursuant to article 52 of the CPLR. River asserted causes of action for violation of restraining notice, misrepresentation and negligence. River claimed that Chase allowed Touris to transfer $43,962.93 from its account after the restraining notice had been served and sought compensatory damages in that amount plus punitive damages.

Chase apparently did not serve an answer, but instead opposed the petition by affidavit. Chase argued that at the time the restraining notice had been served, no funds were being held by Chase and that information had been clearly conveyed in Chase's initial response to River. Accordingly, Chase maintained that since it owed no debt to Touris at the time the restraining notice had been served, the restraining notice was ineffective.

The court awarded River $43,158.88, representing the balance of monies owed after deducting the $1,773 River had already received from the sheriff's levy. The court reasoned that even though Chase had characterized the Touris account as having "no funds available" at the time the restraining notice was served, Chase knew or should have known of River's interest in any funds that were thereafter deposited into the account in light of Chase's reassurances to River on two separate occasions that a hold had been placed on the account pursuant to the restraining notice. The court denied River's request for punitive damages, an issue not raised on appeal.

Despite the fact that Chase represented to River on two occasions that there was a hold on the Touris account and notwithstanding that Chase did place a hold on $2,140.22 in the debtor's account, Chase continues to maintain that the restraining notice was not effective at the time of its service because Chase informed River that there were no funds available on the day the notice was served. River contends that the fact that the account balance was negative does not necessarily mean Chase did not owe a debt to Touris or that Chase was not in possession of property in which Touris had an interest. River further urges that, in any event, Chase is estopped from arguing that the restraining notice was ineffective.

CPLR 5222 (b) provides in part that a restraining notice served upon a third party is effective "only if, at the time of service, [the third party] owes a debt to the judgment debtor . . . or . . . is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor . . . has an interest." Consequently, a bank may not be held liable for violating a restraining notice: (1) where the bank has not opened an account for a judgment debtor, (2) where the bank does not possess property in which the judgment debtor has an interest, and (3) where any other third party does not then (i.e., at the time of service of the notice) owe a debt to the judgment debtor (*see Gallant v Kanterman*, 198 AD2d 76 [1993]; *Greenwood Packing Corp. v Triangle Meat & Provisions Corp.*, 120 AD2d 701 [1986], *lv denied* 68 NY2d 612 [1986]).

We agree with our dissenting colleague's literal interpretation of CPLR 5222 (b). However, under the unique circumstances of this case, we conclude that Chase is equitably estopped from obtaining relief pursuant to this statute. In order to prevail on the theory of equitable estoppel, the party seeking estoppel must demonstrate a lack of knowledge of the true facts; reliance upon the conduct of the party estopped; and a prejudicial change in position (*see BWA Corp. v Alltrans Express U.S.A., Inc.*, 112 AD2d 850, 853 [1985]; *Airco Alloys Div. v Niagara Mohawk Power Corp.*, 76 AD2d 68, 81-82 [1980]).

On this particular record, River has clearly met its burden. Chase's response to the judgment creditor—that a hold had in fact been placed on the debtor's "account(s)"—was, at best, confusing and, at worst, wholly misleading. We disagree with the dissent's interpretation that Chase's form sent in response to River's initial document notice indicates that the "clause referring to an account hold . . . was inapplicable." In our opinion, Chase failed to adequately distinguish the debtor's account information from the clause, which, now in hindsight, ap-

parently was meant to indicate that the debtor had no account upon which a hold had been placed. Indeed, Chase *thereafter actually held $2,140.22 in the account,* directly contradicting its position that the restraining notice River served was ineffective.

In the aftermath of this factual backdrop, Chase can hardly be heard to argue fairly that the restraining notice was ineffective. Indeed, it would be inequitable on these facts to allow Chase "to enforce what would have been [its] rights under other circumstances" (*Metropolitan Life Ins. Co. v Childs Co.*, 230 NY 285, 293 [1921]; *accord Selzer v Baker*, 295 NY 145 [1946]). Accordingly, on this record, Chase is equitably estopped from denying the effectiveness of the restraining notice pursuant to CPLR 5222 (b). Concur—Marlow, Ellerin and Sweeny, JJ.

Saxe, J.P., dissents in a memorandum as follows: In the sphere of commerce and enterprise, where precedent and adherence to established practice and legal rules govern the expectation of businesses, it is unwise for a court to abruptly disregard standard practices founded upon clear legal rules, and instead substitute a result based upon a visceral distaste for their strict application in a particular case. But, that is precisely what the majority has done here, premised upon the dubious application of the doctrine of equitable estoppel.

Petitioner River Seafoods, having obtained a money judgment in the amount of $44,931.88 against Touris Products, Inc., served on respondent JPMorgan Chase Bank a restraining notice pursuant to CPLR 5222, along with an information subpoena pursuant to CPLR 5224 regarding a particular account maintained at the bank in the name of Touris Products. The bank sent back a one-page form response dated October 18, 2002, which form includes this sentence: "Pursuant to the document notice served upon the Bank, a hold has been placed on the judgment debtor(s) account(s)," followed by four blank boxes in which the bank could insert the relevant information, if any, regarding the particular account(s) being held and the amount in it. However, these four blank boxes were left blank, indicating that the clause referring to an account hold, which headed those four blank boxes, was inapplicable. The printed box that *was* filled in, further down on the form response, was headed "Other pertinent information," and in the appropriate spaces on the form were filled in the name of the account holder, the account number and type, the status ("ACTIVE") and, importantly, next to the word "Comments," the words "NO FUNDS AVAILABLE." Almost two months later, on December 10, 2002, Touris's account was credited with two wire transfers in the aggregate amount of $46,962, and thereafter Touris was permitted to withdraw most of those funds from the account.

In this special proceeding pursuant to CPLR article 52, petitioner judgment creditor sought a money judgment against the bank as compensatory damages based upon an alleged violation of the restraining notice. Although the bank pointed out that under CPLR 5222, a restraining notice is ineffective if the garnishee upon whom the notice was served possessed no property of the judgment debtor at the time it was served, Supreme Court granted petitioner the money damages it sought. The majority now affirms, claiming that it need not reach the legal question whether a bank account containing no funds constitutes either "a debt to the judgment debtor" or "property in which . . . the judgment debtor . . . has an interest" under section 5222. Instead, it reasons that the bank must be estopped from now claiming the restraining notice to have been ineffective.

I disagree. The inclusion in the Bank's standard responsive letter of the words "a hold has been placed on the judgment debtor(s) account(s)" cannot supply the basis for applying equitable estoppel, since careful perusal of the form reflects that the relied-upon language was inapplicable to this particular debtor's account. This is especially so in the banking context, where the banking community should be able to confidently rely upon the clear legislative directives such as that of CPLR 5222 (b); it is a mistake to employ the doctrine of equitable estoppel to avoid the established requirements of the statute.

CPLR 5222 (b) provides: "A restraining notice served upon a person other than the judgment debtor or obligor is effective *only if, at the time of service,* he or she owes a debt to the judgment debtor or obligor or he or she is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor or obligor has an interest . . ." (emphasis added). It is well established that under CPLR 5222 (b), a bank or transfer agent *not* in possession of property in which the judgment debtor has an interest, or owing any debt to said judgment debtor, at the time of service of the notice, cannot be held liable for violation of the restraint (*see Greenwood Packing Corp. v Triangle Meat & Provisions Corp.,* 120 AD2d 701 [1986], *lv denied* 68 NY2d 612 [1986]; *Burstin Invs., Inc. v K.N. Invs., Ltd.,* 255 AD2d 478 [1998]; *see also Gallant v Kanterman,* 198 AD2d 76 [1993] [approving rule set forth in *Greenwood Packing*]).

By indicating that the named account held no funds, the bank notified petitioner that it was not in possession of property in which the judgment debtor had an interest. At that moment, petitioner must be deemed aware that its restraining notice was ineffective.

As to the majority's conclusion that the bank should be estopped from challenging the validity of the restraining notice, the prerequisites for imposition of an equitable estoppel are absent here. The party to be estopped must have made a false representation, with the intention or expectation that this misrepresentation would be acted upon (*see BWA Corp. v Alltrans Express U.S.A.*, 112 AD2d 850, 853 [1985]). Additionally, the party seeking the estoppel must show a lack of knowledge of the true facts, reliance on the misrepresentation, and a prejudicial change in position (*id.*). The rationale for imposing such an estoppel is to protect the party seeking the estoppel from a fraud or injustice perpetrated by the party being estopped (*see* 57 NY Jur 2d, Estoppel, Ratification, and Waiver § 3).

Here, no incorrect information was provided to petitioner. The October 18, 2002 form letter clearly indicated that no funds were being held, inasmuch as the one account the bank had in the debtor's name held no available funds. Moreover, the form language stating that "a hold has been placed on the judgment debtor(s) account(s)" must be understood, in context, as intended to apply only if one or more of the four blank boxes immediately following that phrase are filled in. The relied-upon language was clearly inapplicable to the named account with no funds.

Nor did the bank intend the judgment creditor to act upon any misrepresentation. Given the information provided, it would not have been reasonable for petitioner to have relied on the words that "a hold ha[d] been placed" on an empty account.

The bank did not perpetrate a fraud or injustice, nor did petitioner change its position as a result. Both before and after the bank's October 18, 2002 notice, petitioner was in possession of the same $44,931.88 judgment against the judgment debtor, and had no reason to cease searching for the debtor's assets in view of the information the bank provided.

Petitioner relies upon the contention that it was assured by Chase in two separate notices that the Touris account had been restrained, and that it relied on Chase's representations to its detriment. However, inasmuch as Chase initially informed the judgment creditor that it was in possession of no funds in the account of the judgment debtor, rendering the restraining notice ineffective, the subsequent notice is irrelevant. Similarly, the bank's subsequent January 2, 2003 notice that it was holding $2,140.22 contained at that time in the account in question cannot serve to resuscitate an already ineffective restraining notice.

The stability of New York's banking industry requires that

banks must be able to rely upon the language of applicable statutes and the cases clearly explicating them. The application of the doctrine of equitable estoppel here, in order to permit a judgment creditor to collect compensatory damages from a bank, based upon the inclusion of a few words in an inapplicable portion of a standardized form letter responsive to a standard information subpoena and restraining notice, is completely contrary to these crucial concerns.

Accordingly, I would reverse the damages award and deny the petition.