■ JUMAX ASSOCIATES, Appellant, v 350 CABRINI OWNERS CORP., Respondent. [849 NYS2d 35]—

Order, Supreme Court, New York County (Richard B. Lowe, III, J.), entered January 25, 2006, which, in an action between plaintiff sponsor and defendant residential cooperative involving their respective rights to the building's roof, granted defendant's motions for summary judgment dismissing the complaint and declaring on its counterclaim that it is the owner of "any transferrable development rights" to the roof, modified, on the law, to deny defendant's motion for summary judgment on its counterclaim, the above declaration vacated, and otherwise affirmed, without costs.

Defendant's claim to the roof fails insofar as it is based on adverse possession because there is no evidence that defendant had ever claimed such right before September 1995, when it entered into the license agreement with Cellular Telephone Company (Cel-Tel), less than 10 years before the commencement of this action in October 2002 (*see Ray v Beacon Hudson Mtn. Corp.*, 88 NY2d 154, 159 [1996]). Accordingly, we vacate the declaration that defendant is the owner of "any" transferable roof rights. However, defendant is entitled to summary judgment dismissing the complaint, which seeks past and future income from the Cel-Tel license agreement, based on its affirmative defenses of waiver and estoppel. In this regard, the record establishes that although plaintiff was represented on defendant's Board, and indeed was in a position of Board leadership, during the time that the Cel-Tel license agreement and amendments adding antennas and increasing monthly fees were negotiated, discussed and executed, plaintiff never asserted the roof rights reserved for it in the 1986 offering plan until a February 2002 meeting of the Board. As it appears that the offering plan and its amendments were always in plaintiff's possession and thus readily available for plaintiff's consultation and review, we find, as a matter of law, that plaintiff's failure to assert its right to the proceeds of the license agreement evinced a knowing intent not to claim such right (*see General Motors Acceptance Corp. v Clifton-Fine Cent. School Dist.*, 85 NY2d 232, 236 [1995]). Contrary to the dissent, we do not find it persuasive that one of plaintiff's partners could not recall, and another

partner was unaware, that plaintiff had retained the roof rights, particularly in light of plaintiff's February 14, 1985 certification submitted with the offering plan plainly stating, inter alia, that it had read the entire offering plan (*cf. Baumann v Citizens Trust Co. of Binghamton*, 248 App Div 9, 18 [1936], *mod on other grounds* 249 App Div 369 [1937], *affd* 276 NY 623 [1938]). Enforcement of the right to the proceeds of the license agreement at this juncture would also work an injustice on defendant, which, justifiably relying on plaintiff's forbearance, has been acting on the reasonable belief that such enforcement would not be sought (*see Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P.*, 7 NY3d 96, 106 [2006]). Concur—Tom, J.P., Andrias, Marlow and Malone, JJ.

McGuire, J., dissents in part in a memorandum as follows: This appeal involves a dispute between defendant 350 Cabrini Owners Corp. (the co-op), a cooperative apartment building, and the co-op's sponsor, Jumax Associates (Jumax), over the rights to the roof of the building, which, pursuant to the offering plan executed in March 1986, were retained by Jumax. Jumax is a partnership that was originally composed of Irwin Kallman and Edwin Lax. Irwin Kallman served as president of Jumax and as a member of its board of directors. He also served on the co-op's board of directors. His son, Jonathan Kallman, became a partner of Jumax in 1996. He also was a member of the co-op's board of directors, serving as both president and vice president.

In September 1995, the co-op entered into a license agreement (the agreement) with Cellular Telephone Company (Cel-Tel) permitting Cel-Tel to install and operate antennas and related equipment on the roof of the building in exchange for a monthly fee. Although both Irwin and Jonathan Kallman served as representatives of Jumax on the co-op's board of directors, Jumax did not assert any rights to the roof area or to the monthly payments from Cel-Tel until February 26, 2002. Jumax asserts that Irwin Kallman forgot about the retention of the roof rights and that Jonathan Kallman was unaware of it.

Jumax commenced the instant action claiming that it is entitled to past and future income from the agreement based on its retention of the rights to the roof. The co-op moved for summary judgment dismissing the complaint, asserting that Jumax's claims are barred by, among other things, the doctrines of waiver and estoppel. The co-op also moved for summary judgment on its first counterclaim, which seeks a judgment declaring that the co-op is the sole and exclusive fee owner of the premises with the sole and exclusive right to lease, license or

otherwise benefit from its ownership of the roof and roof areas. Supreme Court granted the co-op's motion for summary judgment dismissing the complaint, granted the co-op's separate motion for summary judgment on its first counterclaim, and declaring in the latter regard that the co-op has "rights to the roof and roof areas, and any transferable development rights, and shall have the right to transfer same without restriction of any kind." This appeal by Jumax ensued.

I agree with the majority that Supreme Court erred in granting the co-op summary judgment on its first counterclaim since the co-op failed to establish, as a matter of law, that it adversely possessed the roof rights. I disagree, however, with the majority's conclusion that Supreme Court properly granted the co-op's motion for summary judgment dismissing the complaint, a conclusion that rests upon the majority's determination that, as a matter of law, Jumax waived its right to collect income from the roof rights and also should be estopped from enforcing its rights to the roof.

With respect to the issue of waiver, the Court of Appeals has stated: "A waiver is an intentional abandonment or relinquishment of a known right or advantage which, but for such waiver, the party would have enjoyed. It is the voluntary act of the party and does not require or depend upon a new contract, new consideration or an estoppel. . . . It is essentially a matter of intention. *Negligence,* oversight or thoughtlessness does not create it. The intention to relinquish the right or advantage must be proved. Occasionally it is proved by the express declaration of the party, or by his undisputed acts or language so inconsistent with his purpose to stand upon his rights as to leave no opportunity for a reasonable inference to the contrary. Then the waiver is established as a matter of law. Commonly, it is sought to be proved by various species of proofs and evidence, by declarations, by acts and by non-feasance, permitting differing inferences and which do not directly, unmistakably or unequivocally establish it. Then it is for the jury to determine from the facts as proved or found by them whether or not the intention existed" (*Alsens Am. Portland Cement Works v Degnon Contr. Co.*, 222 NY 34, 37 [1917] [emphasis added]; *see Bono v Cucinella*, 298 AD2d 483, 484 [2002] ["the question of whether waiver has occurred is generally a question left to the finder of fact"]).

In *Byer v City of New York* (50 AD2d 771 [1975]), this Court reversed the dismissal of a complaint on the ground of waiver and estoppel finding that Special Term's determination "that the plaintiff had relinquished a right that, although unknown to

him, ought to have been known since it was a right vested by statute and he is an attorney" was contrary to law. This finding was based upon the principle that "[a] waiver is an intentional relinquishment" that "cannot be created by '[n]egligence, oversight or thoughtlessness' " (*id.* at 771, quoting *Alsens*, 222 NY at 37).

As is evident, *Byer* is right on point. Here, Irwin Kallman stated that he did not recall that Jumax had retained the roof rights and Jonathan Kallman stated that he was unaware that Jumax had done so in the offering plan. Thus, contrary to the majority's position, it is not dispositive that the Kallmans knew or should have known that Jumax owned the roof rights. Jumax's knowledge, be it actual or implied, and its inaction, show "[n]egligence, oversight [and] thoughtlessness," but do not necessarily establish an intentional relinquishment of known rights. Accordingly, there is a triable issue of fact regarding whether Jumax intentionally relinquished its right to collect past income from the roof rights that precludes an award of summary judgment on this issue.

With respect to estoppel, the Court of Appeals has explained: "[t]he purpose of equitable estoppel is to preclude a person from asserting a right after having led another to form the reasonable belief that the right would not be asserted, and loss or prejudice to the other would result if the right were asserted. The law imposes the doctrine as a matter of fairness. Its purpose is to prevent someone from enforcing rights that would work injustice on the person against whom enforcement is sought and who, while justifiably relying on the opposing party's actions, has been misled into a detrimental change of position" (*Matter of Shondel J. v Mark D.*, 7 NY3d 320, 326 [2006]; *see also River Seafoods, Inc. v JPMorgan Chase Bank*, 19 AD3d 120, 122 [2005] ["the party seeking estoppel must demonstrate a lack of knowledge of the true facts; reliance upon the conduct of the party estopped; and a prejudicial change in position"]).

Here, the co-op failed to make a prima facie showing of entitlement to judgment as a matter of law. The co-op cannot claim that it did not have knowledge of the fact that Jumax retained the rights to the roof as such fact was stated in the offering plan. Nor can the co-op establish a prejudicial change in its position as it has not relied to its detriment on Jumax's failure to assert its rights earlier. To the contrary, it benefitted by receiving the income from the contract with Cel-Tel.

The majority's resolution of this appeal leaves Jumax in a curious position. In reversing the grant of summary judgment to the co-op on its first counterclaim, the majority correctly rec-

ognizes that the co-op failed to demonstrate that it owned the roof by virtue of adverse possession. Although in this respect the majority recognizes, at least implicitly, that Jumax is the owner of the roof, the majority nonetheless permanently deprives Jumax, both retroactively and prospectively, of all the economic benefits of a significant ownership right.

Accordingly, I would deny the co-op's motion for summary judgment dismissing the complaint and, on the co-op's motion for summary judgment on its first counterclaim, would declare Jumax the owner of "any transferrable development rights" to the roof, and remand the matter for a trial on the issue of whether Jumax waived its right to collect past income from the roof rights (see e.g. 600 W. 115th St. Corp. v 600 W. 115th St. Condominium, 180 AD2d 598 [1992]).