Estate of Margaret Kainer v Christies Inc.
2026 NY Slip Op 03506
June 4, 2026
Appellate Division, First Department
Higgitt, J.
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Estate of Margaret Kainer et al., Plaintiffs-Appellants,
v
Christies Inc., Defendant-Respondent, John Doe et al., Defendants.

Supreme Court, Appellate Division, First Judicial Department
Decided and Entered: June 04, 2026
Index No. 650026/13|Appeal No. 6402|Case No. 2025-02278|
Sallie Manzanet-Daniels
John R. Higgitt LlinÉT M. Rosado Kelly O'neill Levy Margaret A. Chan

Krauss PLLC, New York (Geri S. Krauss of counsel), for appellants.
Womble Bond Dickinson (US) LLP, New York (Joseph A. Patella of counsel), for respondent.

Plaintiffs appeal from an order of Supreme Court, New York County (Melissa A. Crane, J.), entered on or about April 3, 2025, which denied their motion to renew so much of defendant Christie's Inc.'s motion to dismiss the action pursuant to CPLR 327, to the extent that motion was resolved by the imposition of a stay of this action against Christie's pending resolution of a final determination in the European court(s) regarding whether plaintiffs are the lawful heirs of Margaret Kainer, or, alternatively, to vacate the stay.

Higgitt, J.
[*1]
In this action, plaintiffs, the putative heirs of the owner of a Nazi-looted painting, seek the painting's return and damages from those they allege deprived them of their rights to the work. Approximately nine years ago, a stay was issued suspending the proceedings to permit European courts to resolve the issue of the identity of the lawful heirs to the owner of the painting. Notwithstanding that no such resolution has been achieved, we agree with plaintiffs that the stay should be vacated, and this long-dormant New York action seeking justice for a plunder that occurred in the "unique and horrific circumstances of World War II and the Holocaust" should move forward (Estate of Kainer v UBS AG, 37 NY3d 460, 467 [2021] [internal quotation marks omitted]). Public policy, the particular circumstances of this case, and fundamental fairness compel that conclusion.
I.
The facts, based largely on plaintiffs' allegations and the parties' representations in their respective court filings, have previously been recounted by this Court and the Court of Appeals (see id., affg 175 AD3d 403 [1st Dept 2019]). The information critical to the resolution of this appeal bears repeating.
Over 90 years ago, Ludwig and Margaret Kainer, a Jewish couple, lived in Germany. The Kainers left Germany in 1932 and did not return. After living as refugees in Switzerland during World War II, the Kainers moved to France. Ludwig predeceased Margaret, who died a French domiciliary in 1968, childless and without a will.
At the time the Kainers left Germany, Margaret owned an impressive art collection comprising over 400 works. One of those works was a painting by Edgar Degas entitled Danseuses (the painting). In 1935, Margaret's art collection was looted by the Nazis, and sold at an auction of valuables stolen from Jewish victims. Over the years following the 1935 sale of Margaret's art collection, the works have dispersed throughout the international art community.
According to plaintiffs, defendants UBS AG and UBS Global Asset Management (Americas), Inc. or their predecessors (the UBS defendants) were entrusted by Margaret's father, Norbert Levy, to manage particular trusts for the benefit of the father's family, including Margaret. Those defendants, however, created a trust, defendant Norbert Stiftung (the Foundation), that they then used to obtain, control, and own — and thereby misappropriate — all of the family's assets, including the painting. To facilitate the misappropriation of the assets, the UBS defendants and the Foundation represented to Swiss and German authorities that Margaret had no heirs. The Foundation claims that it owned the rights to the painting by virtue of, among other things, a 1972 "certificate of partial inheritance" issued by German authorities.
[*2]
In 2009, defendant Christie's Inc., a world-renowned auction house, solicited and facilitated a "restitution settlement agreement" with the Foundation. Purporting to act under color of right, the Foundation renounced any rights it had as the heir to the painting. That renunciation removed any cloud on the title of the painting, making it marketable for the Japanese gallery that then possessed it.
Utilizing the restitution settlement agreement, Christie's facilitated a November 2009 private sale of the painting for $6 million. It is not obvious whether the sale entailed the Japanese gallery's purchase of the painting from the Foundation or the Japanese gallery's sale of the painting to a third party. Under the restitution settlement agreement, the Foundation received $1.8 million as a result of the private sale. Shortly after the private sale, the painting was put up for public auction at Christie's in New York, yielding a winning bid of over $10 million by an undisclosed bidder. Christie's received a commission or commissions for the private and public sales. Plaintiffs, unaware of these transaction, received nothing.
II.
A.
In 2013, plaintiffs, putative heirs of Margaret or their estates' executors, commenced this action against the UBS defendants, the Foundation, and Christie's, seeking redress for an alleged scheme to deprive plaintiffs of their rights to recover the painting. Plaintiffs, who insist that they are the only lawful owners of Margaret's property, rest their assertions of heirship on "certificates of inheritance" issued to them in 2012 in a quasi-judicial French legal proceeding.
As against Christie's, plaintiffs asserted causes of action for unjust enrichment, conversion, and aiding and abetting breach of fiduciary duty. Plaintiffs claim that Christie's played an integral role in the scheme to deprive them of their rights with respect to the painting: Christie's knew that victims of Nazi thefts or their heirs were seeking to recover looted artwork or restitution for it; that the art market was seriously impacted by questions of title relating to Nazi-looted artwork; that in order to facilitate a robust market for a work of art associated with Nazi theft, title to the work had to be quieted; and that Christie's was well-positioned to aid in legitimizing title to a suspect work. Moreover, plaintiffs claim that in light of its expertise in vetting artwork, Christie's knew or should have known that the Foundation did not have rights to the painting.
B.
[*3]
In response to the operative complaint, the UBS defendants, the Foundation and Christie's moved to dismiss the action on the grounds of forum non conveniens (see CPLR 327). The crux of defendants' respective CPLR 327 motions was that the issue of the identity of the party to the rights to the painting — the Foundation, plaintiffs or some other third party — was sharply contested; extensive administrative and judicial proceedings had taken place in various European countries relating to that issue; that plaintiffs had initiated proceedings in Switzerland in which the issue of the identity of the party with the rights to the painting would necessarily be determined; and that even assuming New York courts have personal jurisdiction over all defendants, the Swiss courts were the superior forum for adjudication of the issue of whether plaintiffs have rights over the painting. Plaintiffs opposed the motions.
C.
In a thorough decision and order, entered on October 31, 2017, Supreme Court (Marcy Friedman, J.) granted the motions of the UBS defendants and the Foundation to dismiss the complaint against them based on forum non conveniens. Supreme Court granted Christie's motion to the extent of staying this action pending a final determination by a Swiss court that plaintiffs, not the Foundation, are the heirs of Margaret's estate with rights to the painting. Additionally, Supreme Court dismissed the cause of action for unjust enrichment against Christie's. The court differentiated the UBS defendants and the Foundation from Christie's, noting that the UBS defendants and the Foundation were Swiss entities that were parties to the Swiss actions or had consented to the jurisdiction of the Swiss courts, whereas Christie's was not a party to a Swiss proceeding and had not consented to the jurisdiction of that nation's courts. The court also highlighted the nexus of Christie's alleged tortious conduct to New York.
On plaintiffs' appeal, we affirmed, agreeing with Supreme Court's forum non conveniens analysis (Estate of Kainer, 175 AD3d 403). We noted the burden that would be placed on New York courts in applying foreign law, particularly given that the law of multiple European countries might be implicated, and the potential hardship to the non-Christie's defendants of litigating in New York. As to the availability of an alternative suitable forum, we wrote,
[*4]
"Switzerland appears to be an available alternative forum. France and Germany also may be possible alternatives. Plaintiffs have asked the Swiss court to find that they are the sole heirs to the Kainer estate, declare the Swiss certificates of inheritance null and void, and order that all assets—not just the painting at issue herein—originating from Kainer's estate be returned to plaintiffs. Whether the Foundation and Christie's could enter into their agreement to sell the painting 'cannot be determined without reference to the underlying issue of ownership—the very issue that is already being litigated abroad' (Citigroup Global Mkts., Inc. v Metals Holding Corp., 45 AD3d 361, 362 [1st Dept 2007]). This factor thus favors dismissal, in part due to the risk of conflicting rulings (id.; see Datwani v Datwani, 121 AD3d 449, 449 [1st Dept 2014], lv denied 24 NY3d 912 [2014])" (Estate of Kainer at 405-406).
Additionally, we observed in a footnote that "Christie's conduct is at issue only if the Foundation is found not to be the sole lawful heir, with authorization to release claims to the painting in the [restitution settlement agreement]. Accordingly, Supreme Court issued a stay of proceedings against Christie's, conditioned upon a determination in European courts under European estate law, whether the Foundation and plaintiffs are heirs to the painting" (id. at 406 n).
On further review of the forum non conveniens dismissals as to the UBS defendants and the Foundation, the Court of Appeals affirmed our order, rejecting plaintiffs' argument that those defendants' motions for forum non conveniens relief should be denied as a matter of law (Estate of Kainer, 37 NY3d 460).
III.
In August 2024, plaintiffs sought renewal of Christie's prior motion for forum non conveniens relief that led to the stay (see CPLR 2221[e]). Alternatively, plaintiffs sought vacatur of the stay in the interest of justice.
Regarding renewal, plaintiffs argued that new evidence existed that would result in the denial of Christie's motion and vacatur of the stay: statements by Christie's that represented a concession, waiver, or estoppel on the issue of whether plaintiffs were the lawful heirs. Plaintiffs pointed to the 2022 public sale of another work from Margaret's collection, Camille Pissaro's L'Anse des Pilotes. The notice by Christie's for that sale provided, "[t]o be offered for sale pursuant to a settlement agreement between the current owner of the heirs of Ludwig and Margaret Kainer. The settlement agreement resolves the dispute over ownership of the work and the title will pass to the successful bidder." The "heirs of Ludwig and Margaret Kainer" referred to in the notice are plaintiffs, and the referenced settlement agreement resolved a Georgia lawsuit between plaintiffs and Christie's relating to the Pissaro painting.
[*5]
According to plaintiffs, Christie's statement relating to the Pissaro painting constituted a public recognition that plaintiffs are the lawful heirs. Plaintiffs note that Christie's recognition of plaintiffs as the lawful heirs was unqualified, and that neither the notice nor the settlement agreement suggested that plaintiffs were the lawful heirs of only the Pissaro painting. Plaintiffs insisted that, because the painting and the Pissaro painting came from the same collection, Christie's recognition of plaintiffs' status as the lawful heirs for the purpose of one painting was tantamount to a recognition of their status as the lawful heirs generally, thereby resolving the heirship issue in the New York action.
As to their alternative argument regarding vacatur in the interest of justice, plaintiffs highlighted that the New York action was commenced in 2013 and the stay was imposed in 2017; that owing to motion practice and the stay, no discovery had taken place; and that the Swiss proceedings had not meaningfully progressed. Plaintiffs contended that they were being prejudiced significantly by the continued stay: several of the original plaintiffs had died and others were elderly, and without discovery, plaintiffs could not ascertain who possesses the painting and future efforts to recover it would therefore be inhibited.
Christie's opposed the motion, maintaining that the new facts upon which plaintiffs relied did not change the prior determination to impose the stay. Christie's stressed that the reason for the imposition of the stay remains — to wit, the Swiss proceedings remain ongoing. Moreover, Christie's insisted that its statement in connection with the Pissaro painting could not be construed as an acknowledgment that plaintiffs were the lawful heirs of Margaret's estate. Rather, Christie's made a strategic decision with respect to the dispute involving that painting, a decision that could not and did not resolve the legal question of the identity of the lawful heirs previously pinpointed by the New York courts and being litigated in Switzerland. Its statements in connection with the sale of the Pissaro painting relating to plaintiffs' heirship were not unqualified admissions regarding plaintiffs' status generally, but rather were designed to facilitate the resolution of the dispute of the Pissaro painting only. And unlike in the Pissaro painting dispute, Christie's has consistently challenged plaintiffs' standing to maintain the New York action.
[*6]
Christie's disagreed that plaintiffs were experiencing substantial prejudice as a result of the continued stay, noting that plaintiffs' action as against it was for damages, not recovery of the painting, and that any delay in the Swiss proceedings should be attributable to plaintiffs as the ones prosecuting those proceedings. Additionally, Christie's claimed that it would be the victim of prejudice if the stay was vacated because it would be compelled to spend time and money defending a lawsuit brought by parties that may not in fact be the proper plaintiffs.
IV.
Supreme Court denied plaintiffs' motion, observing that the Swiss proceedings were still ongoing and that the basis for the stay from this Court still existed. Plaintiffs' appeal ensued.
V.
A.
A motion to renew is a request by a party for the court to consider anew a prior motion in light of new facts or a change in the law that would change the determination of the prior motion (see CPLR 2221[e][2]). Here, the new facts offered by plaintiffs would not change the prior determination imposing the stay.
Plaintiffs' concession, waiver, and estoppel arguments rest on Christie's notice relating to the public sale of the Pissaro painting, which provided that it was "to be offered for sale pursuant to a settlement agreement between the current owner of the heirs of Ludwig and Margaret Kainer. The settlement agreement resolves the dispute over ownership of the work and the title will pass to the successful bidder."
Nowhere in the notice did Christie's yield its defense in this action, generally, that plaintiffs are not the lawful heirs of Margaret; rather, the statement regarding plaintiffs' heirship was limited to the Pissaro painting. Similarly, Christie's statement did not constitute a waiver of the issue of whether plaintiffs are the lawful heirs. The notice does not manifest a clear, unmistakable, and unambiguous intentional relinquishment by Christie's of its standing defense (see Matter of Professional Staff Congress-City Univ. of N.Y. v New York State Pub. Empl. Relations Bd., 7 NY3d 458, 465 [2006]; Hadden v Consolidated Edison Co. of N.Y., 45 NY2d 466, 469 [1978]). And no estoppel was effected by the notice; plaintiffs did not change their position in this action to their detriment (see Nassau Trust Co. v Montrose Concrete Prods. Corp., 56 NY2d 175, 184 [1982]; River Seafoods, Inc. v JPMorgan Chase Bank, 19 AD3d 120, 122 [1st Dept 2005]).
Thus, Supreme Court providently exercised its discretion in denying that aspect of plaintiffs' motion seeking renewal.
B.
[*7]
Separate and apart from renewal, plaintiffs seek vacatur of the stay in the interests of justice (see Blittner v Filroben, 183 AD2d 645, 645 [1st Dept 1992]). Indeed, "[w]henever it seems appropriate on the facts of the particular case to undo the stay and continue the proceedings, the remedy is a motion to vacate the stay" (Patrick M. Connors, Practice Commentaries, McKinney's Cons Laws of NY, CPLR 2201, 2201:17, at 33 [main vol]). The discretionary determination of whether to vacate a stay in the interests of justice is informed by all of the relevant circumstances, including the amount of time the stay has been in effect, whether the stay is open-ended, whether the stay is conditioned upon events over which New York courts have no jurisdiction, and whether a party is or will be prejudiced by the continuance of the stay (see Haenel v November & November, 144 AD2d 298, 299-300 [1st Dept 1988]; Blittner,183 AD2d at 645; Kwiatkowski v National Student Marketing Corp., 85 AD2d 559, 560 [1st Dept 1981]).
Under the totality of the circumstances, the stay is no longer serving the ends of justice (see Blittner,183 AD2d at 645). The stay, which was initially imposed by Supreme Court in 2017 and affirmed by this Court in 2019, has been in effect for approximately 9 ½ years. The stay is open-ended and conditioned upon events — the resolution of Swiss proceedings — over which New York courts have no jurisdiction. Most importantly, plaintiffs will be prejudiced by the continuation of the stay. This action was commenced in 2013, yet Christie's has not interposed an answer because of its pre-answer motion to dismiss for forum non conveniens and no discovery has occurred. Given plaintiffs' allegations relating to Christie's, discovery will presumably be necessary on events that occurred, among other times, in 2009 when Christie's facilitated the private sale and public auction, and further delay of this action threatens to make it difficult if not impossible for plaintiffs to reconstruct the facts necessary to prove their case (see Haenel, 144 AD2d at 299).
[*8]
Public policy, too, plays a role in our decision. With respect to Nazi-looted art, national public policy demands that "steps should be taken expeditiously to achieve a just and fair solution to claims involving such art that has not been restituted if the owners or their heirs can be identified" (Estate of Kainer, 37 NY3d at 467, citing the Holocaust Expropriated Art Recovery Act [HEAR Act], Public L 114-308, 130 US Stat 1524 [114th Cong, 2d Sess, Dec. 16, 2016] [internal quotation marks omitted]). Given the timeline of events relating to this action, a continuation of the stay would thwart a just and fair resolution of plaintiffs' claims. An element of the public policy on claims concerning Nazi-looted art is to avoid, or at least ameliorate, delay in the resolution of such claims. That element is not being satisfied here. State public policy is also implicated: New York has a compelling interest in protecting the integrity of its art market (see id. at 468, citing Solomon R. Guggenheim Found. v Lubell, 77 NY2d 311, 320 [1991]), an interest that is not furthered by intractable delay of a proceeding implicating the legitimacy of a sale of a painting that occurred in New York.
Christie's understandably protests that plaintiffs should not be able to pursue their claims in New York while the issue of the identity of the lawful heirs to Margaret's estate remains open. Relatedly, Christie's points out that the reason the stay was issued (the pendency of Swiss proceedings that could resolve the issue of the identity of the lawful heirs of Margaret) remains. But in light of the particular circumstances surrounding this action and the weighty public policy concerns implicated by plaintiffs' claim, justice is furthered by vacating the stay and permitting the parties to crystallize their claims and defenses, undertake discovery, and, potentially, resolve this dispute. We do not want the responsibility of prosecuting this action to fall to the next generation of Margaret's heirs.
To be clear, we do not purport to overrule our prior order affirming the imposition of the stay. At the time a panel of our colleagues affirmed the order imposing the stay, the Swiss proceedings had been pending for approximately six years, and it was fair to assume that those proceedings would be concluded in a reasonable amount of time. But seven years have passed since our affirmance of the stay, and nothing in the record before us or the parties' briefs suggests that the Swiss proceedings are nearing disposition (cf. Kwiatkowski, 85 AD2d at 560). Moreover, we are not critical of the motion court's order on appeal; understandably, the court was reluctant to disturb a stay previously endorsed by this Court. We simply conclude that at this point in time, the interests of justice are best served by vacating the stay.
VI.
[*9]
We therefore conclude that the aspect of plaintiffs' motion seeking vacatur of the stay in the interests of justice should be granted and the matter remanded to Supreme Court for further proceedings. Christie's is free to seek a stay anew should a note of issue be filed in this action before the Swiss proceedings have concluded or if the circumstances otherwise demand such a request. Plaintiffs' arguments, presented at oral argument and supported by their motion to supplement the record on appeal, relating to the HEAR Act of 2025, which has been passed by Congress and is awaiting presidential action, should be addressed in the first instance by Supreme Court should plaintiffs choose to press them.
Accordingly, the order of Supreme Court, New York County (Melissa A. Crane, J.), entered on or about April 3, 2025, which denied plaintiffs' motion to renew so much of defendant Christie's Inc.'s motion to dismiss the action pursuant to CPLR 327, to the extent that motion was resolved by the imposition of a stay of this action against Christie's pending resolution of a final determination in the European court(s) regarding whether plaintiffs are the lawful heirs of Margaret Kainer, or, alternatively, to vacate the stay, should be reversed, on the law and in the exercise of discretion, without costs, plaintiffs' motion to vacate the stay granted, and the matter remanded to Supreme Court for further proceedings.
M-1634 Estate of Kainer v Christie's Inc., et al .
Motion for leave to file supplemental document, denied.
Order, Supreme Court, New York County (Melissa A. Crane, J.), entered on or about April 3, 2025, reversed, on the law and in the exercise of discretion, without
costs, plaintiffs' motion to vacate the stay granted, and the matter remanded to Supreme Court for further proceedings.
Opinion by Higgitt, J. All concur.
Manzanet, J.P, Higgitt, Rosado, O'Neill Levy, Chan, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 4, 2026